ELWOOD B. MINGAY, Appellant, *v.* MARY ESTELLE LACKEY, Impleaded, etc., Respondent.

By an interlocutory judgment in an action for partition, which directed a sale of the premises, it was provided that the life estate of defendant M., a tenant by the curtesy, be included in the sale, the referee to pay out of the proceeds of the sale " a gross sum in satisfaction of said tenancy by the curtesy, to be fixed * * * according to the principles of law applicable to annuities." After entry of said judgment and before a sale M. died. Thereafter, upon motion, the judgment was amended by striking out the provision in reference to said life estate. *Held,* no error; that the death of the life tenant terminated his interest; this rendered the execution of that part of the judgment directing a sale of that interest impossible, and the proceeds of sale could not equitably be charged with the supposed value of the life which had terminated; and that until a sale the proceedings were incomplete and the right of the life tenant to a share of the proceeds was conditional, not fixed and absolute.

*Robinson* v. *Govers* (138 N. Y. 425), distinguished.

Reported below, 74 Hun, 89.

(Submitted April 23, 1894; decided June 5, 1894.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 1, 1893, which affirmed an order of Special Term.

This appeal is from an affirmance by the General Term of the second department of an order of the Special Term amend· ing, upon the application of the defendant, Mary Estelle Lackey, an interlocutory judgment in the action entered April 8, 1893, by cancelling and striking therefrom a provision directing a sale of the interest of James B. Mingay, a tenant by the curtesy in the premises directed to be sold, and payment by the referee appointed to make the sale out of the proceeds of a gross sum in satisfaction of such interest, to be fixed by him " according to the principles of law applicable to annuities." The action was for partition. The plaintiff is the son of Mary L. Mingay, who died Sept. 8, 1892, seized of three parcels of land situated respectively in Westchester county, the city of New York and the city of Brooklyn, leaving surviving her her husband, James B. Mingay, and two children, the plaintiff and the defendant Mary Estelle Lackey. The plaintiff brought this action Nov. 16, 1892. It is alleged in the complaint that Mary L. Mingay died intestate, seized of the three parcels of land above mentioned, and leaving her husband and two children above named her only heirs at law surviving her ; that the lands descended in equal shares to the plaintiff and the defendant Mary Estelle Lackey, subject to the tenancy by the curtesy of the husband ; that subsequent to the death of Mary Louise Mingay, the defendant James B. Mingay assigned and conveyed his life interest to the plaintiff. The complaint prays partition of the premises according to the rights of the parties as alleged therein, or for a sale and division of the proceeds if actual partition cannot be made. The defendant Mary Estelle Lackey answered and put in issue the allegation of the complaint that the mother died intestate, and alleged that she made a will devising the whole property sought to be partitioned to the defendant Mary Estelle Lackey. This issue was brought to trial before a jury and resulted in a verdict for the plaintiff. Thereafter, upon

due application, the Court at Special Term directed judgment to be entered in the action and an interlocutory judgment was thereupon entered. The judgment declared the rights and interests of the several parties as stated in the complaint, viz., that the plaintiff Elwood B. Mingay and the defendant Mary Estelle Lackey were each entitled to the undivided half of the premises in fee, subject to the life estate of James B. Mingay as tenant by the curtesy, which life estate had by transfer become vested in the plaintiff. It adjudged that an actual partition could not be made, and directed that the whole premises be sold by a referee named and that the "tenancy by the curtesy be included in the sale," and that the referee pay out of the proceeds of the sale "a gross sum in satisfaction of the said tenancy by the curtesy to be fixed by the said referee according to the principles of law applicable to annuities." The judgment also provided for a reference to take an account of rents and profits received by the defendant Mary Estelle Lackey, and made provision for costs and for an extra allowance to be fixed on a sale of the property, and contained other provisions not necessary now to be stated.

After the entry of the interlocutory judgment and before a sale or any further proceedings, and on the 27th of April, 1893, the said James B. Mingay died. Thereafter a motion was made in behalf of the defendant Mary Estelle Lackey to correct the interlocutory judgment by striking out the provisions for the sale of the estate by the curtesy and the payment of a gross sum in satisfaction thereof. The motion was granted, and from the order made thereon an appeal was taken to the General Term where the order was affirmed.

*Sidney H. Stuart* for appellant. The order is appealable. (Code Civ. Pro. § 190 ; *Moulton* v. *Cornish,* 138 N. Y. 133.) The interlocutory judgment must declare the right, share and interest of each party in the property so far as the same has been ascertained, and must determine the rights of the parties therein. (Code Civ. Pro. § 1546.) The judgment is complete so far as the rights of the parties are concerned. Noth-

ing remains to be done except a sale and distribution of the pro-
ceeds.. The principles by which the rights of the parties are
determined is established, and the steps necessary to reach the
point at which final judgment may be awarded are directed to
be taken. (*C. V. N. Bank* v. *Lynch*, 76 N. Y. 516 ; *Tilton*
v. *Vail*, 117 id. 521 ; 21 Abb. [N. C. ] 348.) Defendant
James B. Mingay had no further interest in the tenancy after
its conveyance to the plaintiff, in whom it became vested, and
whose property therein cannot be destroyed by said defend-
ant's death. (*Robinson* v. *Govers*, 138 N. Y. 425 ; *McKean*
v. *Fish*, 33 Hun, 30 ; *Fulton* v. *Fulton*, 8 Abb. [N. C.] 210.)
The provision at the end of the judgment that the parties
may at any time apply, at the foot of the judgment, for
further order or direction, is of no avail to the defendant.
Mary Estelle Lackey. That provision refers only to the ques-
tion of details in carrying out the judgment and does not.
affect its essential provisions. (*Taggart* v. *Hurlburt*, 66
Barb. 553.) The motion was premature and should for that
reason have been denied. (Code Civ. Pro. § 1577 ; *Tilton* v.
*Vail*, 117 N. Y. 521. The judgment cannot be altered or
amended upon motion. It is an adjudication binding upon the
parties, and conclusive as to them, and is an estoppel. (*Riggs*
v. *Parcell*, 74 N. Y. 378.)

*Edwin S. Babcock* for respondent. The judgment is.
merely interlocutory and not a final one determining the
rights of the parties. (*Cruger* v. *Douglass*, 2 N. Y. 571 ;.
*Clark* v. *Brooks*, 2 Abb. [N. S.] 404, 407, 585; *Smith* v.
*Lewis*, 1 Daly, 452 ; *Morris* v. *Morange*, 38 N. Y. 172, 174 ;.
Code Civ. Pro. §§ 1200, 1545, 1546, 1576, 1577.) Being an
interlocutory judgment in partition, and no proceedings taken
under it, it was still within the control and power of the court.
to modify it as to provisions which had become inoperative.
and absurd, and in the interests of justice to conform it to
existing facts, and obviate a mistake in fact not arising at the.
trial. (*In re Price*, 67 N. Y. 231, 235, 236 ; *In re Buffalo*,.
78 id. 362, 370 ; Baylies on New Trials, 6 ; *McCall* v. *McCall*,

54 N. Y. 541–548; *Brown* v. *Brown,* 58 id. 610; Code Civ. Pro. § 724.) The modification of the interlocutory judgment by the order appealed from was proper and requisite in the interests of justice. Plaintiff's right, as assignee of a life estate, to any part of the proceeds to be derived from a sale of the land as a sum in gross for the value of that life estate ceased when the estate itself was terminated by death of the life tenant before the sale. (*McKeen* v. *Fish,* 33 Hun, 28; 99 N. Y. 645; *Robinson* v. *Govers,* 138 id. 425; *Mulford* v. *Hiers,* 2 Beas. 13; *McLaughlin* v. *McLaughlin,* 22 N. J. Eq. 505.) The order of the Special Term modifying the interlocutory judgment so as to conform to the facts, was a matter in its discretion, and that discretion has been ratified and confirmed by the court in banc, and will not be reviewed here. (*Grant* v. *Griswold,* 82 N. Y. 569, 571.)

ANDREWS, Ch. J. The judgment of April 8, 1893, was interlocutory and not final. It declared the then existing rights and interests of the parties to the litigation in the land. But it divested no titles. It directed a reference for sale, for inquiry for computation and for accounting. It provided for a distribution of the proceeds of the sale based upon the several interests in the land which should be included in the sale. But the sale would become binding only upon confirmation by the court, and until confirmation the purchaser would not be required to pay the purchase money, and until the purchase money was paid or secured there would be no fund for distribution. The practice in partition proceedings of entering in the first instance an interlocutory judgment, to be followed by a final judgment upon the termination of the proceedings authorized by the interlocutory judgment, prevailed in chancery and is expressly authorized and required by the Code. (1 Barb. Ch. Pr. 327; *Clarke* v. *Brooks,* Ct. App., 2 Abb. [N. S.] 385; Code of Civil Pro., §§ 1545, 1546, 1577.)

James B. Mingay as the original tenant by the curtesy was properly joined as defendant in the action. He had conveyed his life estate to the plaintiff. He was a proper party in order

to conclude him by a judgment, adjudging that his title had
been vested in the plaintiff. When the interlocutory judg-
ment was rendered the life estate of John B. Mingay had not
terminated. It was an estate in the land, which, if he had
continued in life, could only be divested by a sale of the land
and the final judgment confirming the sale. If he had sur-
vived that event he would have been entitled to an interest in
the proceeds, represented by a gross sum. But that sum, what-
ever it may have been, would have been awarded to him for
his estate which passed by the sale. The interlocutory judg-
ment is based on this view. It assumes that the estate by
the curtesy will continue and be in existence at the time
of the sale, and will then be sold. It in terms directs
that the " said tenancy by the curtesy be included in the
sale." It declares that the purchasers shall hold the prop-
erty free and discharged of any claim by virtue thereof.
It provides for the payment of a gross sum " in satisfaction of
the said tenancy by the curtesy, to be fixed by the said
referee according to the principles of law applicable to annui-
ties." These provisions would be absurd and unmeaning unless
they contemplated that the life estate of James B. Mingay
would be in existence at the time of the sale and would
be extinguished thereby. If the life estate terminated by
the death of the life tenant before the sale, there would
be no life estate to sell; the purchasers would need no
discharge therefrom ; and unless the life tenant survived the
sale, there would be no basis for fixing a gross sum out of the
proceeds, estimated by the probable duration of life under
the annuity tables, for the life would be gone. The statute
also contemplates that the proceeds of sale in partition pro-
ceedings are to be distributed among the persons whose
interests are affected by the sale. Section 1580 of the Code
declares that the proceeds of sale " must be awarded to the
parties whose rights and interests have been sold, in propor-
tion thereto." The death of the life tenant after the inter-
locutory judgment and before any further proceedings had
been taken, rendered impossible the execution of the part of

the judgment directing that the sale should include the life estate and the provisions for ascertaining its value. If the subject of the partition had been property of which actual partition could be made, and the interlocutory judgment had provided that the life tenant should have actual possession during his life, his death would at once terminate any right under the judgment. When the judgment provides for a gross sum, and before any sale is had the life tenant dies, it would be most inequitable to charge the proceeds with the supposed value of a life which had already terminated. The case of *Robinson* v. *Govers* (138 N. Y. 425) does not justify the claim of the plaintiff. There the dowress had consented to take a gross sum, based on the value of the lands. The sum had been judicially ascertained and the court had confirmed the final report of the referee providing that the plaintiff was entitled to the sum specified. The actual entry of the order on the decision was the only thing lacking to formally complete the proceeding and constitute a perfect judgment fixing the plaintiff's right. It was held that her death, after the decision and before the entry of the order, did not defeat the claim, and that an order might be entered as of the time when the decision was made. The proceedings in the present case had not reached the point of a final ascertainment of the sum which should be paid for the value of the life interest. The proceeding was tentative and incomplete, and the right of the life tenant to a share of the proceeds was conditional, and not fixed and absolute. We entertain no doubt of the power of the Special Term to correct the interlocutory judgment to make it conform to the new situation brought about by the death of the life tenant after that judgment was entered and before any further proceedings had been taken. It was, we think, a power inherent in the court in the interest of justice. (See *McCall* v. *McCall*, 54 N. Y. 541; *Matter of Price*, 67 id. 231; *Matter of City of Buffalo*, 78 id. 362.)

The orders of the General and Special Terms should be affirmed.

All concur.

Orders affirmed.