In the Matter of the Application of Mary Elizabeth Lang-slow, as Executrix of Richard D. Lewis, Deceased, Respondent, for an Order Directing K———, an Attorney, Appellant, to Pay Over Certain Moneys.

1. Appeal — Referee's Finding — Affirmance by Appellate Division. A referee's finding, upon conflicting evidence, in a summary proceeding to compel the payment of money collected by an attorney at law, that the latter has no money of the petitioner which came to him as attorney, and that the only money in his hands belonging to her came to him as her business agent, adopted by the Special Term and affirmed by the Appellate Division, is conclusive in the Court of Appeals.

2. Jurisdiction — Consent of Attorney Confers no Power upon Court to Compel by Order in a Summary Proceeding Payment of Money in his Hands as a Business Agent. A stipulation in the proceeding providing for the amendment of an order of reference so as to include also the determination of the differences between the parties as to

moneys in the attorney's hands as a business agent, and authorizing the court upon the confirmation of the referee's report to enter a decree ordering him to pay over any amount found due, is binding upon him in his character as business agent only to the extent of the determination of the amount due, since the court, having no jurisdiction to compel by order instead of judgment and execution the payment of moneys in his hands as agent, cannot, even with his consent, acquire such jurisdiction, which would make him subject to imprisonment without bail for contempt if he failed to obey the order.

*Matter of Langslow,* 52 App. Div. 635, modified.

(Argued April 15, 1901; decided June 4, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, made July 9, 1900, affirming an order of Special Term entered upon the report of a referee directing the appellant herein to pay over to the petitioner certain moneys.

This proceeding was instituted by a petition and notice of motion to compel the appellant to pay over to the respondent certain moneys which she alleged he had collected as her attorney at law. The appellant denied that he had received, in a professional capacity, any money belonging to her, and alleged that, as an attorney, he had performed valuable services for her, in payment for which, with her consent, he had applied certain moneys collected by him as her business manager. The Special Term, upon its own motion, made an order sending the issue to a referee to take the proofs and report with his opinion whether the appellant " acted as attorney for the petitioner in collecting all or any portion of the money referred to in the petition, and the amount, if any, that was collected by him as her attorney." It was further ordered that the referee should " ascertain and report the amounts for which" the appellant "should be credited on account of disbursements made by him and on account of legal services rendered by him to the petitioner." The order contained no direction for the payment of any sum that might be found due.

After the close of the evidence, the referee filed an opinion stating that some of the moneys in question had been received

by the appellant as attorney and some as business agent, and that the petitioner could not "have a full and final adjudication of all the matters referred to in the petition in this proceeding." Thereupon the parties entered into a stipulation, which, after stating that its object was "to avoid further litigation and to enable the parties to this controversy to come to a full, absolute and binding determination as to all the questions in difference between them," provided that an order might be entered *nunc pro tunc* amending the order of reference so as to give the referee full power to hear, pass upon and report with his opinion as to all the differences between the parties, and to state separately the value of the appellant's legal services and of his services as agent, as well as the amount of all moneys received by him in either capacity, with the balance, if any, due and owing by him in both capacities. It was further stipulated "that upon the coming in of the said report and its confirmation or modification by the court an order" might "be entered directing the" appellant "to pay over to the petitioner any amount which may by the court, upon such report, be found to be due from him to her with like force and effect as if the order had so provided in the first instance." The Special Term made an order accordingly and the reference proceeded.

Upon the hearing it appeared that the appellant, with complete success, had conducted an important proceeding for the respondent, extending over a period of five years, during which he had advanced all the disbursements. After one trial before the surrogate, another before a jury and two appeals to the Appellate Division, he succeeded in defeating the probate of a will, purporting to have been made by the grandfather of the respondent, upon the ground of undue influence and lack of testamentary capacity. The result was that, through an earlier will, which was admitted to probate, the respondent became entitled to more property than she would have received under the will so set aside. After she came into possession of the property, which consisted largely of improved real estate in Kansas City, she employed the

appellant to manage it for her as her business agent. There was no controversy as to the amount of money received by him, but there was a contest as to the capacity in which he received it and as to the value of his services. The referee found that the total amount received by him was $13,550.70; " that the aggregate amount of his disbursements therefrom, which he is entitled to have allowed and which are undisputed, is $6,911;" that he had paid to the respondent several sums of money, amounting to $230; that he was " entitled to retain for the legal counsel and services of himself and his firm the    *    *    *    sum of $3,980, and this sum represents the amount which he has collected and received in the capacity of attorney at law; for his services as business agent for said petitioner he is entitled to retain the sum of $990; the aggregate of these deductions from the whole amount received is $4,970, and the balance $1,439.53, for which balance," he continued, " with interest thereon from January 1st, 1898, I find and decide as conclusion of law, that said " appellant " is now indebted to the petitioner. I also find and decide that said balance accrued from moneys collected and received by said " appellant " in his capacity as business agent for petitioner and not as attorney at law." The referee expressed no opinion and made no recommendation as to the relief that should be granted.

The respondent moved at Special Term to confirm the report and for an order requiring the appellant to pay said balance, with costs and disbursements. At the same time the appellant moved to confirm the report and to dismiss the proceeding, with costs against the petitioner. The court made an order confirming the report, fixing the petitioner's disbursements in the proceeding at the sum of $539.50, being simply the fees of the referee, and requiring the appellant within twenty days after notice of the order to pay the petitioner $2,150.58, being said balance with interest and referee's fees. The appellant appealed to the Appellate Division from " each and every part " of said order, " except that portion which confirms the referee's finding that the respondent has

no money in his hands which he received as attorney at law."
The Appellate Division affirmed the order, one of the justices
not voting, and thereupon the appellant appealed from the
order of affirmance to this court.

*John Van Voorhis* for appellant. The referee having found
as a fact that the respondent has received no money as attorney
which he is not entitled to retain, and that finding having been
confirmed by the Special Term, the petition should have been
dismissed, with costs. The petition is the foundation of this
proceeding and there is nothing in it asking for any relief
against the respondent as an agent. The only relief sought
for against him by the petition is that he be required to pay
over moneys that he has received as attorney which he is not
entitled to retain. The referee finds he has received no
such moneys, and that finding is affirmed by the court.
(*Matter of Husson*, 26 Hun, 132.) Summary proceedings
based upon the petition could not be maintained for the rea-
son that the relation of attorney and client did not exist with
reference to the moneys found to be due from the respondent
to the petitioner. (*Tylee* v. *L. I. R. R. Co.*, 14 Beav. 14;
*Taylor* v. *L. I. R. R. Co.*, 38 App. Div. 595; *Matter of Hille-
brandt*, 33 App. Div. 193; *Cole* v. *Grow*, 1 Scott N. R. 30;
*Ex parte Faith*, 9 Dowl. P. C. 973; *Matter of Knapp*, 85
N. Y. 284; *Matter of Forster*, 49 Hun, 114; *Matter of
Baltes*, 64 N. Y. Supp. 613; *Ex parte Lange*, 18 Wall. 163,
178.) Jurisdiction of the subject-matter cannot be conferred
upon any court by stipulation or consent. (*Bartlett* v. *Spicer*,
75 N. Y. 528; *Bullard* v. *Kuhl*, 54 Wis. 544, 545; *Mathie*
v. *McIntosh*, 40 Wis. 120; *Dicks* v. *Hatch*, 10 Iowa, 380,
384; *Latham* v. *Edgerton*, 9 Cow. 227; *Dudley* v. *Mayhew*,
3 N. Y. 9; *Oakley* v. *Aspinwall*, 3 N. Y. 547; *Burckle* v.
*Eckhart*, 3 N. Y. 137; *Beach* v. *Nixson*, 9 N. Y. 35; *Mul-
drow* v. *Norris*, 2 Cal. 74.)

*James Breck Perkins* for respondent. The appellant acted
in a professional capacity in receiving and withholding the
balance of $1,439.53. (*Matter of Dakin*, 4 Hill, 42; *Grant's*

*Case,* 8 Abb. Pr. 357; *Ex parte Staats,* 4 Cow. 76; *Saxton* v. *Wyckoff,* 6 Paige, 182; *Wilmerdings* v. *Fowler,* 14 Abb. Pr. [N. S.] 249; *Matter of Grant* v. *Chester,* 17 How. Pr. 260; *B. G. S. Bank* v. *Todd,* 52 N. Y. 489; *Matter of Husson,* 26 Hun, 130; *Matter of Aitkin,* 4 B. & A. 48; *Clarke* v. *Sawyer,* 2 N. Y. 498.) The order entered on the stipulation of the parties was valid and binding. Even if the conclusion of the referee, that the balance was received by the appellant as business agent and not as attorney, was correct, the order directing him to pay was proper. (*Matter of N. Y., L. & W. R. R. Co.,* 44 Hun, 275; *Dawson* v. *Parsons,* 74 Hun, 221; *Aldrich* v. *Carpenter,* 160 Mass. 166; *Lange* v. *Benedict,* 73 N. Y. 12; *Belden* v. *Wilkinson,* 44 App. Div. 420; *McCormick* v. *P. C. R. R. Co.,* 49 N. Y. 303; *Sentenis* v. *Ladew,* 140 N. Y. 463; *Cowenhoven* v. *Ball,* 118 N. Y. 234; *Matter of N. Y., L. & W. R. R. Co.,* 98 N. Y. 447; *Leiter* v. *Beecher,* 2 App. Div. 577.)

Vann, J. The Special Term specifically confirmed the report of the referee " in all respects," and thus necessarily adopted the facts found by him. As the respondent has not appealed from the order of confirmation, she is bound by the facts thus established and cannot attack them on this appeal. The appellant does not attack that portion of the report which states, in substance, that he is not indebted to the respondent for any moneys received in a professional capacity, but he contends that the referee erred in finding that he was indebted to her for a balance received by him as her business agent. As there was a conflict in the evidence relating to this subject, and the Appellate Division has affirmed, the finding is conclusive in this court.

Both parties have acquiesced in and are bound by the finding that the appellant has no money of the respondent which came to him as an attorney, and that the only money in his hands belonging to her came to him as her business agent. This narrows the controversy to the question whether the amended order of reference, although made upon the written

stipulation of the appellant, is binding upon him, and if so, to what extent. That order authorized the referee to decide the entire controversy, and authorized the court, upon confirming his report, to direct the appellant to pay the respondent any amount found due from him to her.

The court had no jurisdiction upon a summary application based upon a petition and notice of motion, to compel the appellant to pay over moneys collected by him merely as a business agent. The cases where the court has jurisdiction to thus enforce payment by an attorney are confined strictly to moneys collected in an official or professional capacity. If an attorney acts as a commercial agent for another and receives money in that capacity, the remedy for non-payment is by action only. An agent who collects money is not subject to summary process to compel the payment thereof merely because he happens to be an attorney. He cannot be punished for contempt if he retains moneys collected by him in pursuance of an ordinary contract of trade, not involving the relation of attorney and client. It is only when he receives money while acting as an officer of the court that there is jurisdiction to compel payment by order instead of by judgment and execution. For the protection of the court and the maintenance of high character on the part of its officers, acts done by an attorney, as such, are carefully scrutinized and he is held to a rigid accountability for moneys received by him by virtue of the professional relation. Courts, however, do not extend such acute scrutiny to mere business relations between lawyers and laymen, such as have no connection with the office of attorney, but might exist as well if neither party to the transaction were a lawyer. For wrongs done by an attorney in his professional character he may be summarily proceeded against, but for acts done by him merely as a man of business, the person aggrieved by his misconduct is left to the remedy by action, although the court, in order to protect the public, maintain the integrity of the legal profession, and protect it from the influence of a vicious member, may discipline or disbar the offender.

Whether this proceeding rests on the provisions of the Code or upon the general control exercised by the Supreme Court over attorneys at law, there was no power to require the appellant to pay a debt to the petitioner, even if contracted in a fiduciary capacity, unless it sprang directly from the relation of attorney and client. (Code Civ. Pro. §§ 14, 2266 *et seq.*) The court could not acquire jurisdiction to proceed summarily against the appellant, even with his express consent, for the non-payment of a debt contracted by him merely as agent. While he was bound by his consent to liquidate the claim through the medium of a motion instead of an action, he was not bound by his consent that the court might order him to pay it, when liquidated, with the necessary result that if he did not obey the order he would become guilty of contempt and subject to imprisonment without bail until he complied with it. Upon the recovery of a judgment against him for moneys received in a fiduciary capacity, merely as agent, an execution against his person could be issued, provided an execution against his property had been returned unsatisfied. Under these circumstances, however, upon giving an undertaking he would be entitled to the liberties of the jail and could thus avoid actual imprisonment. (Code Civ. Pro. § 149.) After a comparatively short time, upon making an assignment and otherwise conforming to the statute, he could be discharged even from constructive imprisonment. (Id. §§ 2200–2218.) Imprisonment for contempt in failing to obey an order of the court, however, is never constructive but always absolute, and the person subject to it must be actually confined in jail. Can a man by agreement incur this liability? Can he stipulate himself in jail? While he can stipulate facts can he stipulate power to imprison himself? Can he by consent give the court jurisdiction to deprive himself of liberty, when without such consent it would have no such power? The answer to these questions is obvious. Imprisonment is a form of slavery, and the law will not permit a man to enslave himself even by the most solemn engagement. The right to personal liberty is so sacred that he cannot part with it by consent, although he may

41

forfeit it by crime. He cannot barter away his liberty, nor be deprived of it without due process of law. He cannot give his own body in pledge nor consent that a court may imprison him unless he pays a certain debt. He cannot put himself in contempt by promising that a failure to do a certain thing may be punishable as for contempt when it would not otherwise be thus punishable. He cannot consent to be imprisoned any more than he can consent to be assaulted, or to forfeit one of his members, or a "pound of flesh." Such engagements cannot be enforced by any court, because security of the person is protected by the Bill of Rights against any violence unless inflicted by command of the law itself.

The appellant could lawfully consent to the liquidation of the claim of the petitioner against him and of his own against her, even in a proceeding founded on a petition and notice of motion. Hence we consider that he is bound by the concurrent action of the courts below in settling the amount of his indebtedness to the respondent, including as a part thereof the fees paid to the referee. All this he lawfully consented to and hence the liquidation is final so that she can proceed by action without further litigation as to amount. (*Burnside* v. *Whitney*, 21 N. Y. 148; *Cutter* v. *Cutter*, 16 J. & S. 470; *S. C.*, 98 N. Y. 628; *Diedrick* v. *Richley*, 2 Hill, 271; *New York Lumber & W. W. Co.* v. *Schnieder*, 119 N. Y. 475, 478.) To this extent, therefore, the action of the Supreme Court should be sustained. The appellant could not, however, lawfully consent to go to jail for non-payment, and that part of the order which might lead to that result cannot be sustained.

The orders of the courts below should be modified by striking out the provision requiring payment of the amounts found due and, as thus modified, affirmed, without costs in this court to either party.

O'BRIEN, J. (dissenting). I cannot concur in the modification of the judgment in this case, for the reason that in my opinion it is not a modification at all, but an entire change in its nature and character, not in some particular or particulars,

but in its entire scope and meaning. It is more injurious to the plaintiff than a reversal or a dismissal of the whole proceeding, since it deprives her of her original cause of action, assuming that the attorney was only her business agent. Her claim against him in that capacity was enforceable by arrest and imprisonment, as in like fiduciary relations. But under the judgment as modified, her action must be on the order appealed from so far only as it liquidates the amount due by the attorney to the client as agent. That must be an action on the judgment and hence an action on contract, enforceable only by execution against property. I am not aware of any authority to bring such an action, and unless it is authorized by statute, this court cannot confer such a right. I am not aware of any authority to issue execution on such an order as modified, and it would probably be a bar to any action for the debt due by the agent or otherwise. Unless I am greatly mistaken, the judgment of this court, so far as the petitioner is concerned, will turn out to be worse than a Trojan gift, since it is filled with elements of danger to her just rights and interests. This court has power to reverse a judgment or order and grant a new trial, or to affirm or modify or grant to either party such judgment as such party may be entitled to. (Code C. P. § 337.) The decision in this case is neither a reversal nor an affirmance, nor does it grant such judgment as the party is entitled to. If there is no claim against the defendant, except for money in his hands, received as business agent, then he is entitled to have the proceedings dismissed, the order reversed, and the petitioner remanded to her action at law on her original claim.

The judgment of an appellate court is not in any legal or proper sense a modification of the judgment below when it changes the cause of action from one *ex delicto* into a cause of action *ex contractu*. An order of the Supreme Court under section 14 of the Code, made in a summary proceeding and which directs the attorney to pay to the client a specified sum of money in his hands as attorney, cannot be changed in this court, under the power to modify, by adjudging that the

money in the hands of the attorney is but a simple debt. An order against an attorney under that section is enforceable by attachment and not by execution, and unless there is money in the hands of the attorney as such, which he refuses to pay to the client, there is no jurisdiction in the courts to adjudge the existence of any claim. When it is once determined that the relation is one of debtor and creditor only, there is no jurisdiction to make any further order, and of course the proper judgment is to dismiss the proceeding and to remand the client to an action at law to recover the money. The decision in this case secured to the attorney all the advantages of the litigation since his compensation for services has been adjusted by the referee at $5,000 and it is by no means certain that he may not be able in any future litigation to interpose the order in this case as a bar. The petitioner has conducted the litigation to an apparently successful conclusion, but the modification of the order by this court leaves her in a worse position than when she instituted the proceeding. Her original cause of action was worth more to her than any rights secured to her by the order, since she had a right in the first instance to have all the questions tried by a jury, including the measure of the defendant's compensation, and to enforce the judgment not only by execution against property, but against the person as well. It is hardly necessary to say that she has no such right under this order. The compensation of the attorney is settled, as well as the balance of the fund in his hands, and if an action can be maintained upon it at all, there will be no question for the jury. So, as it seems to me, we ought either to affirm this order, or to reverse it and leave the client to pursue her original remedy at law unembarrassed by any questions that have been determined in the proceeding without jurisdiction.

I am in favor of affirming the order. The argument in this court does not, in my opinion, disclose any material error that will justify us in interfering with the judgment of the court below in dealing with one of its own officers in a summary proceeding under the Code. I am not very much

impressed with the principal, and indeed the only ground that the court has discovered in the record for interfering with the order made by the courts below. The original order of reference made in the proceeding was modified by the attorney on his own application based upon a stipulation that "upon the coming in of the said report and its confirmation or modification by the court, an order may be entered directing the defendant to pay over to the petitioner any amount which may by the court upon such report be found to be due: from him to her with like force and effect as if the order had so provided in the first instance." It may be quite true that neither an attorney nor any one else may procure himself to be imprisoned by consent or by contract; but to say that the stipulation in this case was, under the circumstances, a consent on the part of the attorney to go to prison is to distort its real nature and character. I assume that a party who has been sued in any action of tort which may be followed by imprisonment of the party cast in judgment, may, by stipulation in open court or in writing out of court, admit the cause of action both as to the law and the facts; and it seems to me that no one would suppose that such a stipulation was void on the ground that it was in effect an agreement to suffer imprisonment. There can be no doubt, as it seems to me, that the attorney in this case could have admitted in open court or otherwise the truth of the charges brought against him by the client, although this admission would justify an order against him such as was made in the case at bar. No one, I think, would then assume that this was a stipulation to go to prison, and, hence, void as against public policy. That was the effect of the defendant's stipulation in this case and of the order that was entered thereon upon his own application. There was a litigation between the attorney and the client in this summary proceeding concerning the amount of money that he had received and the amount that he should retain as his compensation for professional services. The attorney concluded that it was for his interest to settle these questions in this proceeding. He preferred to have the

amount of his compensation adjusted by one of his professional brethren as referee, rather than to have it measured by the verdict of a jury. He saved the expense of another action and in many ways the stipulation and order were beneficial to him. The stipulation and order, when read together, express the assent of the attorney that whatever sum of money was found to be in his hands over and above his compensation should be deemed to be money held by him for his client in a professional capacity.

When a stipulation of this character is made in a proceeding in a court of original jurisdiction and acted upon, the court no doubt has power to relieve a party from its effect when it is shown to have been improvidently made, or the result of mistake or ignorance; but no such application has been made in this case. The stipulation and order are either good in their entire scope and meaning, or else they are absolutely void and may be attacked collaterally in all courts and places. I do not think that they are void, and in the absence of any application for relief to the court in which the proceeding was pending, they are binding now upon the defendant, whether the fund in his hands represents a simple debt due to the client or money received by him in the course of his professional employment. It was a question only whether he held the money as agent or as an attorney, and in either case the claim could be enforced after recovery by imprisonment. It may be true that in an action at law the defendant would be entitled to give bail upon an order of arrest or for the limits when committed upon execution, but the difference between the two remedies was only one as to the duration of the period of imprisonment. Imprisonment followed in one case as well as in the other, and hence there can be no distinction in principle between the stipulation in the present case and any other stipulation of a like character in an action of tort or in an action to recover money received in a fiduciary capacity.

It is said that the referee in this proceeding found that there was no money in the hands of the defendant received by him

in his professional capacity, but that the balance which he was ordered to pay was received by him as business agent, and that this finding has been affirmed by the court below. Whether the money was in the hands of the defendant as attorney or as agent was a question of law to be determined upon undisputed facts. The facts are all found. There is no dispute about them, and the statement of the referee that the money was held by the defendant as business agent and not as attorney was a pure conclusion of law and is so stated in his report. The money was all received by the attorney while the relation of counsel and client existed between the parties. It was collected by him from the very property which he was employed to recover. Some of it was in the hands of public officers in another state, and the rest of it was received as rents from parties who occupied the property. To say that a part of this money was received as agent and a part as attorney is in my opinion a refinement which the facts of the case do not justify. Except for the defendant's relation to his client as attorney he could not have received the money at all. It was held in another proceeding of this character against the attorney to recover papers in his possession that the deeds, leases and other papers pertaining to the real estate which was the subject of the litigation were all in his hands as attorney, and there was no appeal from this order. It stands in the record as an adjudication between the parties, and to say that he held the papers as attorney, and that he held the money received under the authority which these papers conferred in some other capacity is to make a distinction which is too fine and attenuated for the practical affairs of life.

When the report of the referee came before the court at Special Term it had a right to adopt the facts, as it did, and to reject the legal conclusions, and that is the fair and reasonable interpretation to be given to the order. It is true that the order recites that the report of the referee was in all respects confirmed, but that cannot mean that his conclusions of law were adopted, since the very contrary is expressed in the order. Moreover, it appears from the record that the

defendant's counsel made a motion to confirm the report and to dismiss the proceedings, and on this motion the question with respect to the character or capacity in which the defendant held the money was clearly and sharply presented, and inasmuch as the court made an order directing the attorney to pay the balance in his hands, which there was no power to make unless he held the money in his professional capacity, the court decided, and such decision is expressed in the order, that that was the real character and capacity in which he held the money, notwithstanding the views of the referee to the contrary as matter of law. Indeed, the only criticism that can be made upon the order is that it is inconsistent. If we assume that it was intended to confirm everything that the referee said in his report, then it may be that the order, so far as it directed the attorney to pay over the money, was inconsistent with the recital. That is the very most that can be said with respect to this order, but an inconsistency between the operative part of the judgment or order and the recitals does not, necessarily, present a legal error which justifies this court in changing its entire character and meaning. The order should receive a reasonably fair interpretation, and when properly considered it means that the facts contained in the referee's report relating to the amount of money received, the amount which might be withheld by him as compensation and the balance in his hands, were correct and should be confirmed. But when the court directed a provision inserted in the order requiring the attorney to pay the money, that was, necessarily, a decision that it was received in his professional capacity, and thus the decision overruled the legal conclusion of the referee, and the circumstance that it was not so stated in the order is of no consequence.

But if the order is to be modified at all, it should not, I think, be modified as indicated in the prevailing opinion without the consent of the moving party interested in the recovery. The apparent inconsistency between the operative words in the order, and the recital confirming the report of the referee, is the sole ground for interference by this court. If that is

deemed to be a sufficient ground for relief, it can be corrected by remanding the case to the Special Term for a further hearing, and, therefore, I think the rights of the client would be better protected by reversing the order as it appears in the record, and remanding the case to the Special Term for further consideration, unless the petitioner should consent, within a specified period, to a modification of the order as indicated in Judge Vann's opinion. But I think that the order is right in its present form and should be affirmed, with costs.

Parker, Ch. J., Bartlett, Martin and Cullen, JJ., concur with Vann, J.; Landon, J., concurs with O'Brien, J.

Ordered accordingly.