## In re BISCHOFF et al.

(Supreme Court, Appellate Division, Second Department. March 6, 1903.)

1. INSANE PERSONS—PROCEEDINGS TO DETERMINE SANITY—VACATION.
    On an application to vacate and set aside proceedings de lunatico inquirendo, the matter, involving, as it does, the personal liberty of a citizen, should be given consideration and disposed of, though many of the questions might better have been raised by an appeal.

2. SAME—VENUE.
    When proceedings to determine the lunacy of a citizen are not instituted in the district in which he resides, as required by Code Civ. Proc. § 2323, the order appointing a committee should be reversed.

3. SAME—IRREGULARITIES IN PROCEEDINGS—EFFECT.
    Code Civ. Proc. §§ 2325–2331, provide that a petition for the appointment of a committee for a lunatic must be verified "to the effect that the matters of fact therein stated are true"; that, if it presumptively appears from the petition and proofs that a committee ought to be appointed, the court may order a commission to issue to inquire into the facts; that the commission must direct the commissioners to cause the sheriff to procure a jury, and that they inquire by the jury into the matters set forth in the petition; that each commissioner, before entering on the execution of his duties, must take and file an oath, etc.; and that all the commissioners must attend and preside at the hearing. In such a petition all the facts were alleged as on information and belief, and the verification was in the usual form, that "the same is true of his own knowledge. except as to the matters therein stated to be alleged on information and belief, and as to those matters he believes it to be true." Three commissioners were appointed and joined in a precept to the sheriff to procure a jury. None of the commissioners had then taken the oath, but two of them took it a week later, and proceeded with the inquiry. The third commissioner never took the oath, and did not participate in

the proceedings after signing the precept to the sheriff. *Held*, that the proceedings were void and should be set aside.

**4. SAME—RIGHT TO OBJECT.**
    An alleged incompetent is not deprived of the right to avail himself of irregularities in the proceedings to determine his lunacy by the fact that they were instituted with the consent and approval of his wife.

Appeal from Special Term, Kings county.

Application of Franklin J. Bischoff and others to vacate and set aside proceedings de lunatico inquirendo against Franklin J. Bischoff. From an order (76 N. Y. Supp. 467) denying the application, the petitioners appeal. Reversed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

G. G. Reynolds (Thomas J. Keigharn, on the brief), for appellants.

Henry W. Bookstaver (John A. Straley, on the brief), for respondent.

WOODWARD, J. The question presented here is whether the proceedings leading up to the order of the Special Term, dated February 8, 1898, confirming the verdict of a jury convened to try the question of the mental condition of Franklin J. Bischoff, were so far irregular or void as to justify the Special Term in vacating and setting aside the order; and, while many of the questions might better have been raised by an appeal from the original order, we are of opinion that, as the matter involves the personal liberty of a citizen of this state, it is proper that it should be given consideration, and that such disposition should be made of the controversy as the facts warrant. The rule is well established that courts have always control of their own proceedings, and, where there is not express prohibition, may deal with them so that what is right and just may be reached. In Matter of City of Buffalo, 78 N. Y. 362, 370, and authorities there cited; Matter of Henderson, 157 N. Y. 423, 426, 52 N. E. 183, and authorities there cited; Mingay v. Lackey, 142 N. Y. 449, 455, 37 N. E. 471.

The proceedings necessary to the appointment of a committee for a lunatic are now prescribed by statute (section 2320 et seq., Code Civ. Proc.), and the rule is elementary that in all statutory proceedings, by which the individual is to be deprived of either life, liberty, or property, the power should be exercised with scrupulous regard to the rights of the individual, and under the protection which attends other judicial proceedings affecting person or property, modified only so far as the peculiar nature of the inquiry and the condition of the alleged lunatic may render modification necessary. The fact of lunacy must be ascertained judicially before the court can deprive the lunatic of the custody of his estate or submit his person to the control of a committee. Matter of Blewitt, 131 N. Y. 541, 546, 30 N. E. 587; Schneider v. City of Rochester, 160 N. Y. 165, 172, 54 N. E. 721, and authorities there cited. If it appears from the record, therefore, that there are irregularities going to the substantial rights of the alleged lunatic, it is the duty of this court, under its

inherent powers, to relieve him from the custody of his committee, and restore him to the control of his property.

Section 2323 of the Code of Civil Procedure provides, that proceedings of this character shall be made by petition, and within the judicial district of which the alleged incompetent is a resident; and it was held in the Matter of Porter, 34 App. Div. 147, 54 N. Y. Supp. 654, that a failure to institute the proceedings within such judicial district was an irregularity justifying a reversal of an order confirming the report of a referee and appointing a committee, and transferring the proceeding to the judicial district of which the alleged incompetent was a resident. The petition in the matter now before us was presented to the court in the First Judicial Department, while it is conceded that the alleged incompetent was a resident of City Island, in the Second Judicial District (McTurck v. Foussadier, 51 App. Div. 218, 64 N. Y. Supp. 962); and, if this objection had been raised upon an appeal from the original order appointing the committee, it is not to be doubted that it would have resulted in a reversal.

Section 2325 of the Code of Civil Procedure further provides that the petition shall be in writing, and verified by the affidavit of the petitioner, or his attorney, to the effect that the matters of fact therein stated are true. The material allegations of the petition are stated on information and belief, and the petition is verified in the usual form:

"That the same is true of his own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters he believes it to be true."

So that all of the allegations of the petition, in so far as the mental condition of the alleged incompetent person, rest upon no better foundation than the belief of the petitioner in the matters alleged on information and belief, without any statement as to the source of this information on which the belief is predicated. In Matter of Peck v. Cargill, 167 N. Y. 391, 393, 60 N. E. 775, 53 L. R. A. 888, the court say of a petition for the revocation of a liquor tax certificate:

"The least that should be required in such a case is that the petition should state the facts positively upon oath, unless the statute expressly permits a statement upon information and belief; and this statute does not."

While it may be that the accompanying affidavits supply this defect in some measure, the papers are not as complete as should be required in proceedings of this character, where fundamental rights are involved; and while this, standing alone, might not justify the interposition of this court, it is one of the matters which may fairly be considered in reviewing the proceeding as a whole, and may aid us in reaching a right conclusion.

Section 2327 of the Code of Civil Procedure provides that:

"If it presumptively appears, to the satisfaction of the court, from the petition and the proofs accompanying it, that the case is one of those specified in this title, and that a committee ought, in the exercise of a sound discretion, to be appointed, the court must make an order, directing, either (1) that

a commission issue, as prescribed in the next section, to one or more fit persons, designated in the order."

. And it appears that the court taking original jurisdiction acted under this provision, and did make an order appointing three persons as commissioners to inquire into the facts alleged in the petition.

The next section (2328) provides that the—

"Commission must direct the commissioners to cause the sheriff of a county, specified therein, to procure a jury, and that they inquire, by the jury, into the matters set forth in the petition, and also into the value of the real and personal property of the person alleged to be incompetent, and the amount of his income. It may contain such other directions, with respect to the subjects of inquiry, or the manner of executing the commission, as the court directs to be inserted therein."

Section 2329 of the Code of Civil Procedure provides that each commissioner—

"Before entering upon the execution of his duties, must subscribe and take, before one of the officers specified in section 642 of this act, and file with the clerk, an oath faithfully, honestly, and impartially to discharge the trust committed to him."

If a commissioner becomes incompetent, or neglects or refuses to serve, or removes from the state, the court may remove him; and the court is likewise authorized, from time to time, to fill any vacancy caused by death, removal, or resignation, showing a purpose on the part of the legislature to keep the commission, of whatever number originally composed, full. This purpose becomes the more manifest by the provisions of section 2331 of the Code of Civil Procedure, which provides that:

"All the commissioners must attend and preside at the hearing; and they, or a majority of them, have, with respect to the proceedings upon the hearing, all the power and authority of a judge of the court, holding a trial term, subject to the directions contained in the commission."

The commissioners, whose duty it was to "immediately issue a precept to the sheriff, designated in the commission, requiring him to notify not less than twelve nor more than twenty-four indifferent persons, qualified to serve" (section 2330, Code Civ. Proc.), and to attend and preside at the hearing, for the purpose of determining the question of the competency of the alleged incompetent, were not authorized to act until they had taken the oath prescribed by law. Their appointment could only be consummated, and they fully inducted into office, by that ceremony. It was a condition precedent to their right to perform the functions of their office, and the oath was one of the safeguards provided by statute for the protection of the rights of the individual; and the legislature, by prescribing the form, made the form of the essence of the act. That which the legislature has directed, courts cannot declare immaterial. Merritt v. Village of Portchester, 71 N. Y. 309, 312, 27 Am. Rep. 47; Stebbins v. Kay, 123 N. Y. 31, 35, 25 N. E. 207.

Yet it appears from the record that the three persons designated as commissioners, without taking any oath of office whatever, and on the 14th day of December, 1897, issued a precept to the sheriff to summon the jury in the inquiry. The oath which was taken by Wilber McBride and Robert H. Wylis, two of the commissioners, bears date

of December 21, 1897, while it is conceded that Hugh H. Moore, who joined in the precept to the sheriff, under date of December 14th, never took any oath at all, and did not thereafter act with the commissioners. The statute prescribed the form of the oath. The commissioners were required to swear that they would faithfully, honestly, and impartially discharge the trust committed to them, while the oath taken by the only two who ever took an oath provided that they would "faithfully, honestly, and impartially discharge the duty of commissioner," which, while not in exact conformity, may be deemed a substantial compliance, although the rule recognized in Merritt v. Village of Portchester, supra, leaves the question debatable.

Here, then, was a jurisdictional defect in the tribunal created by the statute for determining the question of the competency of the alleged incompetent. The commission was not consummated when the precept was issued to the sheriff, and the commission as a whole was never brought into being, because the power ·was vested, not in a majority of the commission, but in the commission as composed by the order of the court. For while it is true that a majority of such a commission may act when all of them are present, or when all of them have been notified of the meeting and two of them attend (Matter of Baker, 173 N. Y. 249, 254, 65 N. E. 1100), the duties of a commission composed of three persons cannot be discharged by two of them, where the third has never qualified and has taken no part in the proceedings; and this is especially true where the statute provides that "all the commissioners must attend and preside at the hearing," when they, or a majority of them, have all of the powers of a judge of the court, holding a trial term, etc. (section 2331, Code Civ. Proc.).

It has been held that all of the trustees must unite in the disposal of trust property, and that a deed by two, while a third is living, is not valid. The trustees take as joint tenants, and must all unite in the execution of the trust. Brennen v. Willson, 71 N. Y. 502, 507, and authorities there cited. No reason suggests itself why a different rule should prevail in a matter involving the liberty and property of an alleged incompetent, especially in view of the provisions of the statute cited above. No court or judicial officer can acquire jurisdiction by the mere assertion of it, or by erroneously alleging the existence of facts upon which jurisdiction depends. If the court had no jurisdiction, it had no power to make a record, and the supposed record is not in truth entitled to the character of a judgment. O'Donoghue v. Boies, 159 N. Y. 87, 98, 53 N. E. 537.

As there was never a lawful commission, with power to issue a precept to the sheriff or to preside at the hearing, the verdict of the jury was void for want of jurisdiction, and want of jurisdiction to render the particular judgment may always be asserted and raised, directly or collaterally, either from an inspection of the record itself, when offered in behalf of the party claiming under it, or upon extraneous proof, which is always admissible for that purpose. O'Donoghue v. Boies, 159 N. Y. 99, 53 N. E. 540. If we are right in this view of the case, it is evident that there was no verdict which the court could confirm, and there could therefore, have been no adjudication that the alleged incompetent was insane, or so far incompetent as to render him liable

to the restrictions upon his liberty necessarily involved in the appointment of a committee of his person and property.

Various other matters are alleged against the regularity of the proceedings, but it does not appear to be necessary to consider them. The proceedings to which we have already called attention are sufficient to justify a reversal of the order appealed from, and they are not the less available to the alleged incompetent because it is asserted that they were instituted with the consent and approval of his wife. The incompetent himself could not give the court jurisdiction to deprive him of his liberty (Matter of Langslow, 167 N. Y. 314, 321, 60 N. E. 590), and this power was certainly not invested in his wife and family. He had a right to a trial in the manner provided by law of the question of his sanity, and, not having had such a trial, he is entitled to his liberty. The court which confirmed the verdict of the jury did not attempt to determine the question of the sanity of the alleged incompetent. It merely confirmed the verdict, and, as there could have been no lawful verdict from a jury summoned and appearing before a partially constituted commission, the order of confirmation could not give it validity, and it was proper that the relief asked for in the motion now under review should have been granted. The order appealed from should be reversed, and the motion granted, with costs.

Order reversed, with $10 costs and disbursements, and motion granted, with $10 costs.

GOODRICH, P. J., and JENKS, and HOOKER, JJ., concur. HIRSCHBERG, J., concurs in result.