(May 24, 1948.)

ISIDORE · NEUWIRTH, Plaintiff, *v.* PHILIP MELVIN, Defendant.
MAURICE EDELBAUM, Appellant; SEYMEL BUILDING CORP. et al., Respondents.

MEMORANDUM BY THE COURT. The stock transfer books and papers of respondent corporations were produced at the trial of an action, and thereafter retained by appellant, an attorney. Appellant has a lien for professional services rendered to the defendant in the action, and is entitled to retain the papers of his client. But the relationship of attorney and client does not exist between the appellant and respondent corporations. On summary applications of respondents, two orders were made directing the appellant to turn over the books and papers of respondents.

The documents were *in custodia legis* and appellant's possession was as an officer of the court. It is unnecessary to consider authorities which, in disregard of that fact, are not controlling and are irrelevant and academic.

Orders affirmed, without costs.

JOHNSTON, J. (dissenting). I dissent. In my opinion the orders about to be affirmed cannot be supported by any controlling precedent and may not be sustained on any legal basis. They would not have been made if the court had been mindful of the admonition, so frequently reiterated, that summary authority should always be exercised with great prudence and caution and with a sedulous regard for the rights of the attorney. It will be helpful to review the history of the litigation out of which these orders grew.

Melvin, defendant in this action, was sued for separation. Neuwirth, the plaintiff, instituted this action against Melvin to recover the reasonable value of services rendered to Melvin's wife in the separation action. Appellant appeared for Melvin in this action which, in February, 1947, resulted in judgment for the plaintiff. The judgment was affirmed by this court (273 App. Div. 859). At the trial certain books and records of two corporations, of which Melvin formerly was the sole, and then was the principal stockholder, were produced. Admittedly all of them, with the exception of the stock cer-

tificate books now in appellant's possession, have been returned. One year after the trial the corporations commenced separate summary proceedings to compel appellant to return the stock certificate books. The summary proceedings came on before Mr. Justice RUBENSTEIN, who denied the applications "without prejudice", holding that "The relation of attorney and client does not exist between the applicant and the respondent [appellant herein] and the Court has no summary jurisdiction in the proceeding". No oppeal was taken from the orders entered thereon.

The corporations, upon petitions identical with their petitions in the summary proceedings, immediately made separate motions in this action for the identical summary relief which had been denied by Mr. Justice RUBENSTEIN. The motions, which came on before Mr. Justice POWERS, were granted by the orders appealed from.

The moving papers allege merely that the corporations were served by plaintiff with subpœnas duces tecum to produce their books and records at the trial; that, through their secretary, they did so; "that said books and records were turned over at the time of said trial, to" appellant; and that all of them were returned, except the stock certificate books, which appellant retains although demand therefor has been made.

Appellant in his answering affidavits denies that he obtained the stock certificate books in the manner set forth in the petitions and that they were produced at the trial by the corporations pursuant to subpœnas duces tecum. Appellant alleges that at the request of his client (Melvin), the latter's son-in-law, who is secretary of the corporations, delivered the corporate books and records to him so he could prepare the case for trial and, after the corporations were served with subpœnas, appellant produced them in court. Appellant then alleges that after the trial he retained the books, together with all the other records, in his possession; that they were again used by him in another action entitled "Helen Melvin v. Philip Melvin", which he tried in the Supreme Court, and neither in that action nor in the present action has he been paid for his services. Pending the appeal from the judgment in favor of plaintiff in this action, an order was entered substituting another attorney for Melvin in place of appellant and fixing appellant's compensation at $2,000 for services rendered. That order decrees that appellant has a "good and valid lien on the papers in his possession" until the $2,000 are paid. Appellant further alleges that no part of the $2,000 has been paid and avers that the relationship of attorney and client does not exist between him and respondents.

Obviously, when Mr. Justice RUBENSTEIN denied "without prejudice" the applications in the prior summary proceedings because the relationship of attorney and client did not exist between appellant and respondents, he did not intend that respondents might again apply for the identical summary relief. He meant that respondents were free to assert any claim or claims they may have against appellant in a plenary action. The effect of the orders appealed from is that respondents, by motions in the action and on petitions identical with their petitions in the prior summary proceedings, have secured from Mr. Justice POWERS the identical summary relief which was denied them by Mr. Justice RUBENSTEIN. Such practice is not to be encouraged and, even if no other reason existed, it should form sufficient ground for reversal of the orders appealed from. Even assuming respondent's practice to be regular, I know of no authority permitting motions such as these to be made, not by a party but by a stranger to the action.

However, there is another fundamental reason why the orders should be reversed. That the right to a summary remedy against an attorney must be based upon the relation of attorney and client is a proposition so well established that the citation of authority should be unnecessary. Suffice to say, the cases are legion, although one in the Court of Appeals, *Matter of Minnesota Phonograph Co. (Tomlinson)* (148 App. Div. 56, affd. on opinion below, 212 N. Y. 574), and four in this court — citing many others — may be noted: *Taylor v. Long Island R. R. Co.* (38 App. Div. 595), *Matter of Sigmund Contracting Co. v. Montegriffo* (153 App. Div. 374), *Matter of Hitchings (Wyckoff)* (157 App. Div. 392), and *Franz v. Gelson* (250 App. Div. 869).

The above proposition is so firmly imbedded in the law that even where an attorney stipulates that the court may summarily determine his rights, the court is without jurisdiction to direct him to return money or property where, in fact, the relationship of attorney and client does not exist. (*Matter of Langslow,* 167 N. Y. 314.)

The remaining inquiry is: Does the relationship of attorney and client exist between appellant and respondents? Appellant in his answering affidavits avers that it does not. Respondents in their moving papers not only do not assert the contrary, but in their brief disclaim the existence of any such relationship. In that respect the case at bar is similar to *Matter of Niagara, L. & O. Power Co. (Pallace)* (203 N. Y. 493). There the petitioner instituted a summary proceeding to compel an attorney to deliver certain documents to which it claimed to be entitled and which he claimed to hold under an attorney's lien for compensation for services. The petitioner admitted it never retained the attorney in connection with the proceedings which placed in his hands the documents sought. It was held (pp. 496, 497) that petitioner thereby " unquivocally deprived " itself of the right to maintain the proceeding, the court stating that the relationship of attorney and client is the " very foundation " of such a summary proceeding and that the petitioner's position in denying that appellant at any time acted as its attorney is " irreconcilably inconsistent " with its right to summary relief. In that case petitioner argued (as do respondents in the case at bar) that the attorney came into possession of the documents in question under such circumstances and for such purposes as to prevent him from holding them under his lien for compensation. However, the court held that, since the petitioner was entirely without right to maintain the proceeding, it was immaterial that appellant may be improperly retaining the papers.

Accepting as true respondents' claim that the books were produced by them at the trial pursuant to subpœnas duces tecum, I find no basis in this record for holding that the books were *in custodia legis.* The function and purpose of a subpœna duces tecum are to have the documents available for use at the trial. When produced, the documents do not pass into the custody of the court but remain in the custody and under the control of the person producing them. Into whose custody they pass if *used* at the trial need not now be considered for respondents do not claim they were used at the trial and the record (273 App. Div. 859) shows that the books in question were not used at the trial in that they were not received or offered in evidence or marked for identification. Moreover, respondents do not claim that the books were ever given to the court, but affirmatively allege that they " were turned over at the time of said trial " to appellant. Hence, they came into appellant's possession rightfully.

But even if there be a basis for holding that the stock certificate books at one time were in the custody of the court, they were not in such custody at the

conclusion of the trial, for it appears without dispute that after the trial the books, with all the other records, remained in appellant's possession; that he retained possession of them, and subsequently they were used by him in the trial of another action in which this defendant was also the defendant. Appellant's possession of the stock certificate books for the period between February, 1947, when the trial of the present action was concluded, and February, 1948, when the prior summary proceedings were commenced, must have been with respondents' consent. At least, there is no contention to the contrary.

Assuming that the books were produced by respondents at the trial pursuant to subpœnas duces tecum and, therefore, they were in the custody of the court, the legal effect of appellant's retention of the books is that at the conclusion of the trial they passed out of the court's custody into respondents' custody and respondents again turned them over to appellant for his use in the trial of the other action. Therefore, on this record, this court is without power to hold that the books were in the custody of the court at the time the orders appealed from were made, or that they were wrongfully taken by appellant from the custody of the court at the conclusion of the trial.

Furthermore, in March, 1948, when the orders appealed from were made, there was in existence an order of a court of competent jurisdiction, dated November 26, 1947, decreeing that appellant " had a good and valid lien on the papers [which included the books] in his possession ". Therefore, again assuming that the books were produced by respondents at the trial pursuant to subpœnas duces tecum and that they were in the custody of the court; and also. assuming that the trial court had power to direct appellant, as an officer of the court, to return the books to respondents, the Special Term was without power, on this record, summarily to order appellant forthwith to turn over to respondents the books and other papers in his possession. The effect of the orders appealed from is that the Special Term has summarily determined the merits of rival claims — respondents' and appellant's — to the property in question. " One does not forfeit any of his rights by becoming an attorney at law. He has the same rights thereafter that other persons have, which includes the right to have asserted claims against him established in the regular and ordinary way, that is, by action ✱ ✱ ✱." (*Matter of Minnesota Phonograph Co. [Tomlinson]*, 148 App. Div. 56, 60–61, *supra*.)

The orders should be reversed and the motions denied, without prejudice to respondents' prosecuting such plenary action as they may be advised.

Carswell, Adel and Sneed, JJ., concur in Memorandum by the Court; Johnston, J., dissents and votes to reverse the orders and to deny the motions, without prejudice to respondents' prosecuting such plenary action as they may be advised, in opinion in which Lewis, P. J., concurs.

Orders affirmed, without costs. [See 274 App. Div. 816.]