**Joseph P. JENKINS, Petitioner,**

v.

**Honorable Zita L. WEINSHIENK, Judge of the United States District Court for the District of Colorado, Respondent.**

**No. 81–2268.**

United States Court of Appeals, Tenth Circuit.

Feb. 12, 1982.

Joseph S. Payne and Joseph P. Jenkins, Estes Park, Colo., for petitioner.

Gary J. Ceriani of Davis, Moorhead & Ceriani, Denver, Colo., for respondent.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

**LOGAN, Circuit Judge.**

Attorney Joseph P. Jenkins petitions this Court for writs of mandamus and prohibition,[1] directing Judge Zita L. Weinshienk to vacate her order requiring Jenkins to relinquish all papers in his files relevant to the pending civil action, *Woodworth v. Stanley Vacation Club, Inc.*, Civ. No. 81–Z–818 (D.Colo., filed May 22, 1981).

Jenkins has served as lawyer for the defendants in the *Woodworth* case in that and other matters. After he had done lawyer's work and secured information for his files that he and his clients believe may be essential to their handling of the *Woodworth* litigation, Jenkins moved for permission to withdraw as defendants' counsel. However, he attempts to hold his files in the case hostage until the clients pay him his fee of approximately $3,500 they allegedly owe him in *Woodworth* and fees of $75,000 to $100,000 they allegedly owe him for other legal work.

Judge Weinshienk entered orders granting the motion for withdrawal contingent upon Jenkins either delivering his files in the *Woodworth* case to the defendants' substituted counsel or permitting substituted counsel to inspect and copy the files. Later the judge amended the orders to require defendants to post a bond for $3,500 to secure the attorney's lien Jenkins claims for unpaid fees in the *Woodworth* case, but rejected Jenkins's request for a much larger bond to secure the lien he claims for unpaid legal work performed for the defendants on other matters. Judge Weinshienk extended the defendants' time to answer in the *Woodworth* case until ten days after Jenkins gives up his files or allows substituted counsel to copy them.

Jenkins then petitioned this Court for extraordinary relief, claiming that under Colorado law he has a retaining lien on all papers of his client in his possession for all legal fees the clients owe him. He argues that Judge Weinshienk's refusal to recognize his lien to the full extent of fees his clients owe him for other matters deprives him of a property right without due process of law.

■ While mandamus is an extraordinary remedy and should be limited to exceptional cases, *Will v. United States*, 389 U.S. 90, 107, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967), courts have recognized that when a district court orders production of information over a litigant's claim of a privilege not to disclose, appeal after a final decision is an inadequate remedy; in these circumstances, an appellate court may exercise its mandamus power and consider the merits of the claimed privilege. *See Rowley v. McMillan*, 502 F.2d 1326, 1335 (4th Cir. 1974); *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 490 (7th Cir. 1970), *aff'd per curiam*, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971). The instant case is similar to those in which a party claims a legal privilege not to disclose otherwise discoverable material. If Jenkins must comply with the district court order and turn over his papers, his alleged retaining lien, like a litigant's claimed privilege not to disclose information, will be effectively destroyed. Permitting Jenkins to retain possession of his files, while requiring him to allow substituted counsel to inspect and copy them, also will destroy his claimed lien since a retaining lien's effectiveness depends on the client's inability to gain access to the attorney's papers. *See The Flush*, 277 F. 25, 30–31 (2d Cir. 1921), *cert. denied*, 257 U.S. 657, 42 S.Ct. 184, 66 L.Ed. 421 (1922). Because allowing Jenkins to appeal only after a final decision in the underlying litigation would provide an inadequate remedy, we consider this an appropriate case for mandamus.

---

1. Although Jenkins has petitioned for both a writ of mandamus and a writ of prohibition, we will refer hereafter to his petition as one for a writ of mandamus. We think it is properly a writ of mandamus because he would have us compel the district judge to vacate her order and to recognize his attorney's lien. *See Will*

*v. United States*, 389 U.S. 90, 91, 88 S.Ct. 269, 271, 19 L.Ed.2d 305 (1967). However, the technical form of the extraordinary remedy matters little. *See* C. Wright, A. Miller, E. Cooper & E. Gressman, 16 *Federal Practice and Procedure* § 3932, at 206–07 (1977).

We consider, first, the scope of a federal trial court's ancillary jurisdiction to adjudicate fee disputes. Ancillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety. Incident to the disposition of the principal issues before it, a court may decide collateral matters necessary to render complete justice. 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3523 (1975). A few cases have attempted to delineate the boundaries of those matters that are within the court's "ancillary" jurisdiction. In *Morrow v. District of Columbia*, 417 F.2d 728, 740 (D.C.Cir.1969), the court said that (1) an ancillary matter should arise from the transaction that was the basis of the principal proceeding, during the course of the principal proceeding, or as an integral part of the main proceeding; (2) the federal court should be able to determine the matter without a substantial new factfinding proceeding; (3) failing to determine the matter should not deprive a party of an important procedural or substantive right; or (4) the matter should be decided in order to protect the integrity of the principal proceeding or insure that its disposition is not frustrated.

Determining the legal fees a party to a lawsuit properly before the court owes its attorney, *with respect to the work done in the suit being litigated*, easily fits the concept of ancillary jurisdiction. The federal courts often exercise jurisdiction over attorneys' fees in the cases before them, and if counsel withdraws or is discharged during the litigation, the courts have often ordered the clients to pay reasonable attorneys' fees or post a bond as security before requiring the lawyer to relinquish the clients' papers. *See Iowa v. Union Asphalt and Roadoils, Inc.*, 409 F.2d 1239, 1243–44 (8th Cir. 1969) (court may condition attorney's withdrawal upon payment of fees); *National Equipment Rental, Ltd. v. Mercury Typesetting Co.*, 323 F.2d 784, 786 (2d Cir. 1963) (same); Note, *Attorney's Retaining Lien Over Former Client's Papers*, 65 Colum.L.Rev. 296 (1965); *cf. Moore v. Telfon Communications Corp.*, 589 F.2d 959,

967 (9th Cir. 1978) (court may permit substitution of attorneys and determine fees, disbursements, and liens).

Determining the amount of fees a party owes its attorney with respect to legal work that has nothing to do with the case before the court presents problems under the ancillary jurisdiction concept. Except for the attorney's assertion of a retaining lien and consequent refusal to give up papers relevant to the dispute before the court, the attorney-client dispute does not relate to the case before the court. In no real sense does the dispute arise from the transaction that was the basis of the principal proceeding, nor is it an integral part of that proceeding; the court cannot determine the merits of the dispute without a substantial new factfinding proceeding; and resolving the dispute is not essential to protect the integrity of the principal proceeding. Failure to litigate the fee issue does not deprive a party to the principal proceeding of an important procedural or substantive right unless recognizing the lien can be regarded as depriving the client of a "right" because it permits the attorney to withhold important papers from the client. ·

Judge Weinshienk rested her decision at least in part upon a lack of jurisdiction to determine the amount owed Jenkins on matters unrelated to the litigation before her. She relied upon *National Equipment Rental, Ltd. v. Mercury Typesetting Co.*, 323 F.2d 784 (2d Cir. 1963), the only other case we have found directly treating the distinction at issue here. That case, distinguishable on its facts, found a lack of jurisdiction, though without explanatory reasoning:

"The law seems well settled that a federal district court may condition the substitution of attorneys in litigation pending before it upon the client's either paying the attorney or posting security for the attorney's reasonable fees and disbursements, as these may be determined.... However, no court has gone so far as to hold that a district judge may condition substitution upon payment of

fees earned in matters unrelated to the pending litigation."

*Id.* at 786.

■ We agree with that holding only in part. We believe that the federal court has no jurisdiction to adjudicate the *amount* of fees properly owing between Jenkins and his clients with respect to matters unrelated to litigation before the court. To hold otherwise would open the federal courts to possible manipulations to circumvent diversity requirements: A Colorado attorney whose Colorado client allegedly owes fees for legal work could continue to serve as counsel until some suit involving the client is filed in federal court; then, as here, the attorney could withdraw and obtain a federal court forum for the fee litigation by asserting a retaining lien for fees owed in all matters for which he or she served the client.

■ Nevertheless, since Jenkins has files pertinent to litigation properly before Judge Weinshienk, that federal judge must have power—hence jurisdiction—to decide whether the attorney should be required to relinquish them. That, in turn, necessitates determining whether the attorney has a retaining lien, and, if so, whether its assertion is in such conflict with important principles that it must be relinquished when balanced against considerations of public policy. Adjudicating the amount of fees owing between lawyer and client is not essential to determining the existence of an attorney's retaining lien.[2]

In deciding whether a lien exists we look to Colorado law. *Sharar v. Pollia,* 191 F.2d 116 (10th Cir. 1951). The Colorado statute essentially codifies the common law and is very broad:

"An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment and upon money due to his client in the hands of the adverse

party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party."

Colo.Rev.Stat. § 12–5–120. This retaining lien extends to

"all papers, books, documents, securities, and money coming into an attorney's possession in the course of his professional employment. The attorney has a right to retain them in his possession until the general balance due him for legal services is paid, whether such services grew out of the special matters then in his hand, or other legal matters."

*Collins v. Thuringer,* 92 Colo. 433, 21 P.2d 709, 710 (1933).

■■ Therefore, we must hold that Jenkins has the retaining lien he claims, unless some exception applies. Very few exceptions grounded on public policy have been recognized:

"In most cases of conflict with public policy in other areas of the law, the retaining lien will usually prevail as a valid device for collection of attorney's fees. For example, bankruptcy of the client will not negative the lien even though reorganization plans may be thwarted by the attorney's retention of the client's papers. A corporation seeking discovery may be blocked by the lien even though the debt to the attorney is owed by the corporation's directors.... Even in matrimonial actions, where the state is considered to have a significant interest, the attorney's right to retain custody will not be disregarded. Finally, in all cases, doubts as to whether particular papers were given to the attorney in his professional capacity will be resolved against the client."

Note, *supra,* at 305 (footnotes omitted). Courts have recognized an exception when an important personal liberty interest of the client is at stake, as when the papers are essential to defense of a criminal

---

**2.** The lien exists if any fees are owed and apparently continues during litigation over the amount owing. *E.g., Borup v. National Airlines, Inc.,* 159 F.Supp. 808, 810 (S.D.N.Y.1958);

*Morfeld v. Andrews,* 579 P.2d 426, 431 (Wyo. 1978); *Goldman v. Rafel Estates, Inc.,* 269 A.D. 647, 58 N.Y.S.2d 168, 171 (App.Div.1945).

charge. *E.g., Hauptmann v. Fawcett*, 243 A.D. 613, 276 N.Y.S. 523, *modified*, 243 A.D. 616, 277 N.Y.S. 631 (App.Div.1935); *cf.* ABA Comm. on Professional Ethics Informal Opinions, No. 1461 (1980) (in such instances the attorney should forego the lien). Another recognized exception is personal misconduct by the lawyer, as when he has withdrawn without just cause or reasonable notice. *The Flush*, 277 F. 25, 28 (2d Cir. 1921); *Midvale Motors, Inc. v. Saunders*, 21 Utah 2d 181, 442 P.2d 938, 940 (1968). But disagreements with the client and the client's lack of cooperation, as occurred in the instant case according to Jenkins's affidavit, are regarded as justifying the attorney's withdrawal. *See* Note, *supra*, at 304 (cases cited therein).[3]

 An exception is also recognized when the client is financially unable to post a bond or pay—in such cases the client's failure is not deliberate and requiring the client to pay may hinder its ability to secure other representation. *Hernandez v. Nierenberg*, 15 Misc.2d 818, 179 N.Y.S.2d 322 (Sup. Ct.1958); *cf.* ABA Comm. on Professional Ethics Informal Opinions, No. 1461 '(1980) (in such instances the attorney should forego the lien). One reference in the case before us suggests the *Woodworth* defendants are in financial trouble, but the judge did not attempt to justify her order because of the defendants' inability to pay.

 If the only interests at stake in the instant case were those of the attorney and his clients or former clients, the case would present no problem; the lien would be allowed to stand. But also involved is plaintiff Woodworth's interest: on its face Jenkins's retaining lien is interfering with Woodworth's interest in a speedy resolution of his claims. Woodworth is not hurt, however, if the court does not permit defendants to delay the litigation more than would usually be the case when defendants switch

attorneys. Furthermore, the defendants' lack of access to needed papers hurts only themselves. If plaintiff Woodworth needs something in Jenkins's file to prove his case and it is not protected work product, he can get it by discovery or subpoena notwithstanding the attorney's retaining lien. *Neuwirth v. Melvin*, 273 A.D. 1026, 79 N.Y. S.2d 279 (App.Div.1948); Note, *supra*, at 297 n.15.

Jenkins's assertion of the retaining lien has clearly inconvenienced the defendants in the *Woodworth* case. If they do not settle with him, pay up, or file an adequate bond, they may have to duplicate his work, and they may miss some defense or valid counterclaim within Jenkins's knowledge. But that is the essence—the power and the bite—of the attorney's retaining lien. If we were to hold the lien must give way because it hampers the clients' defense of their suit, we would emasculate the retaining lien as it applies to general balances owed attorneys. Other than *National Equipment Rental*, no authority we have seen has suggested such a result is justified, and we decline to take that step. We must remember that Colorado, by statute, has given attorneys the right to the type of lien Jenkins asserts.

 Thus, while we hold that the trial court has no jurisdiction to decide the amount of any fee Jenkins's clients owe him for matters other than the suit properly in federal court, absent a finding of bad conduct by Jenkins or defendants' inability to pay, the trial court must either permit the attorney to withhold the papers under his retaining lien or require the defendants to post a bond large enough to protect Jenkins's claim.[4]

It is so ordered.

---

3. Disbarment because of misconduct is a circumstance justifying forfeiture of the attorney's files. But even in such cases Colorado has protected the attorney's lien right for fees owed in cases in which there was no misconduct. *See MacFarlane v. Harthun*, 195 Colo. 38, 581 P.2d 716, 719 (1978).

4. Of course, in establishing a bond the court need not blindly accept any claim, no matter how ridiculous, an attorney might suggest. It can require affidavits and look behind them sufficiently to establish a "ball park" figure reasonably at issue between the parties.