Berneva BRUTON, Plaintiff,

v.

CARNIVAL CORPORATION, Defendant.

Case No. 11–21697–CV.

United States District Court, S.D. Florida.

Aug. 21, 2012.

David Charles Appleby, John Heyward Hickey, Hickey Law Firm, P.A., Miami, FL, Jeffrey Charles Fox, Greenspoon Marder, P.A., Fort Lauderdale, FL, Juan Pablo Gonzalez–Sirgo, J.P. Gonzalez–Sirgo, P.A., Coral Gables, FL, for Plaintiff.

John Michael Magee, Carnival Cruise Lines, Miami, FL, for Defendant.

## ORDER

EDWIN G. TORRES, United States Magistrate Judge.

This matter is before the Court on two pending motions filed in this closed case that relate to a purported charging lien filed by pre-litigation counsel to Plaintiff, Attorney Jeffrey Fox ("Fox"). First, present counsel for Plaintiff filed a Motion to Allow Settlement Distribution and to Strike Charging Lien [D.E. 38], that is fully ripe for disposition. Fox responded in opposition to that motion [D.E. 43]. Second, at the same time Fox filed his own Motion for Attorneys' Fees and "Notice of Charging Lien" [D.E. 42]. That latter motion relates to the same issues as the former motion and seeks to further the argument that Fox and his law firm are entitled to fees and costs under a charging lien in this case.

## I. BACKGROUND

A lengthy recitation of all the particular details of the parties' pending dispute is not necessary, given the Court's rulings herein. According to Attorney Fox, he and his firm were retained by Plaintiff in August 2010 to pursue personal injury claims against the Defendant. Fox claims that legal work was undertaken on Plaintiff's behalf from that date through February 23, 2011, which included review of medical records, legal research, together with communications with the client, the client's doctors, and the Defendant. Significantly, however, no time was expended by Fox or his firm in filing any litigation on the client's behalf, especially not this

federal action. Fox acknowledges, in fact, that on March 14, 2011, Fox and his firm were discharged by the Plaintiff as counsel on her behalf.

Following Fox's discharge, the Plaintiff sought other counsel to represent her. Attorney Gonzalez–Sirgo filed this action on May 11, 2011. [D.E. 1]. Plaintiff's present counsel, John Hickey of the Hickey Law Firm, P.A., filed his appearance as co-counsel of record for Plaintiff shortly thereafter. [D.E. 9]. The litigation proceeded until it was successfully settled at mediation on or about December 23, 2011. Fox and his firm had no involvement in the litigation after March 2011, which consequently means that Fox never filed any appearance in this case as counsel for Plaintiff. For the same reason, Fox did not participate in the mediation that resulted in the settlement of the case.

Importantly, there is no factual dispute that after Fox's discharge he never filed a notice of charging lien in this action, nor did he ever send his client any such notice. Instead, Fox confirms that he had no other contact with the case after his discharge until he received an email from Plaintiff's present counsel on or about May 16, 2012, advising him of the settlement and asking if Fox or his co-counsel intended to claim any entitlement to fees and costs against their former client. Fox then, for the first time, forwarded a written notice of client on or about May 17, 2012. Fox did not file with the Court, however, any such notice of charging lien. The Court, pursuant to the settlement, had already closed the case back in December 2011. The Court then formally dismissed the case with prejudice on May 24, 2012.

Plaintiff then filed the pending motion for approval of distribution and/or motion to strike charging lien, arguing that he had received a charging lien demand from Fox and his firm that should be stricken as untimely and defective. [D.E. 38]. Fox responded in opposition, arguing that his notice was timely since he had not heard of this case at all until counsel communicated with him and, further, that he was entitled to reimbursement of fees and costs incurred in representing the client prior to his discharge. Plaintiff replied, pointing out that former counsel had presented no authority showing that his notice was timely under Florida law or otherwise valid where counsel did not participate in the action and did not contribute to the resolution of the case. Fox filed his own cross-motion for fees [D.E. 42], which was the first time that he filed a notice in this action seeking to effectuate his charging lien.

## II. ANALYSIS

### A. The Court Lacks Jurisdiction

The federal courts are courts of limited jurisdiction. We possess only the power strictly authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The court's jurisdiction cannot be be expanded merely through judicial decree. *Id.* (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).

With the underlying claims in this litigation now being settled and dismissed, this Court's jurisdiction would ordinarily be extinguished. Any contractual dispute between Fox and Plaintiff, his client, are governed by state law. That dispute gives rise to no claims arising under federal law. And Fox and Plaintiff are all residents of the state of Florida; thus, diversity of jurisdiction is lacking. Accordingly, such dispute(s) would normally be beyond the limited jurisdiction that this federal court

would have. Florida state court, which does have general jurisdiction over these parties and these claims, would be the appropriate forum to litigate such a dispute, assuming that counsel wished to pursue it and face the defenses and likely counter-claims available in an action at law.

There are narrow exceptions, however, to this general rule. One such exception, the doctrine of ancillary jurisdiction—that has been codified in part through federal statute, 28 U.S.C. § 1367—"recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* at 378, 114 S.Ct. 1673. Justice Scalia's opinion for the Court in *Kokkonen* described this ancillary jurisdiction as a way "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80, 114 S.Ct. 1673. The Court, however, emphasized that the doctrine's limits are quite narrow. "[N]o controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Id.* (quoting *Fulton Nat'l Bank of Atlanta v. Hozier,* 267 U.S. 276, 280, 45 S.Ct. 261, 69 L.Ed. 609 (1925)).

As other cases have described it, ancillary jurisdiction "rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety," *Jenkins v. Weinshienk,* 670 F.2d 915, 918 (10th Cir.1982), and "may extend to claims having a factual and logical dependence on 'the primary lawsuit.'" *Peacock v. Thomas,* 516 U.S. 349, 355, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (citations omitted). "The basis of the doctrine of ancillary jurisdiction is the practical need 'to protect legal rights or effectively to resolve an entire, logically entwined lawsuit.'" *Id.*

(quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)).

Ancillary jurisdiction is thus not a permissive doctrine; rather, it represents the "constitutional limits of federal judicial power." *Owen Equip.,* 437 U.S. at 371, 98 S.Ct. 2396. Although a district court's exercise of ancillary jurisdiction is discretionary, the court must be cautious in its willingness to expand its jurisdiction. *See, e.g., Foster v. Bd. of Trs. of Butler County Comm. Coll.,* 771 F.Supp. 1118, 1120 (D.Kan.1991).

One well recognized application of this narrow doctrine is the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due the attorneys for work performed in the lawsuit. *See, e.g., Gottlieb v. GC Financial Corp.,* 97 F.Supp.2d 1310 (S.D.Fla.1999) and *Zaklama v. Mount Sinai Medical Center,* 906 F.2d 650 (11th Cir.1990) (both adjudicating post-judgment attorneys' fees disputes under Florida law charging liens); *see also Rivera–Domenech v. Calvesbert Law Offices PSC,* 402 F.3d 246, 250 (1st Cir.2005) ("Courts have rested the exercise of jurisdiction over [attorney-client] fee disputes related to proceedings before them on the doctrine of ancillary jurisdiction."); *Garcia v. Teitler,* 443 F.3d 202, 207–09 (2nd Cir. 2006) (federal courts have ancillary jurisdiction to address attorney fee disputes in ongoing criminal cases); *Garrick v. Weaver,* 888 F.2d 687, 690 (10th Cir.1989) (quoting *Jenkins,* 670 F.2d at 918: "It is well established that '[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.'"); *Foster,* 771 F.Supp. at 1120 ("Courts have exercised ancillary jurisdiction over disputes between attorneys and

clients over the proper amount of attorneys' fees due to the attorneys for work performed in the underlying litigation.").

 In the context of attorney fee disputes, the exercise of ancillary jurisdiction is particularly appropriate because courts have inherent jurisdiction to supervise the bar and to insure compliance with the reasonableness standard set forth in the attorneys' rules of ethics and professional responsibility. *E.g., Garcia,* 443 F.3d at 207; *Rosquist v. Soo Line R.R.,* 692 F.2d 1107, 1111 (7th Cir.1982); *In re Michaelson,* 511 F.2d 882, 888 (9th Cir.1975); *Broughten v. Voss,* 634 F.2d 880 (5th Cir. 1981) ("The basis for exercise of this ancillary jurisdiction is the responsibility of the court to protect its officers ... and the power of the court 'to do full and complete justice.'") (internal citations omitted).

The supplemental jurisdiction statute, as amended and codified at 28 U.S.C. § 1367, incorporated these concepts of ancillary jurisdiction (plus the related concept of "pendent" jurisdiction) into "supplemental" jurisdiction: "... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...."

From this it is clear that had Fox filed a charging lien in this case, after appearing as counsel of record and arising from a dispute that Fox had with Plaintiff as to the payment of fees, then the Court could correctly exercise supplemental jurisdiction over that dispute through a Florida charging lien proceeding. But the dispute here does not fall within that well-established narrow category of available ancillary jurisdiction. Fox concedes that he was never counsel of record in this litigation. He purportedly was retained by Plaintiff under a contingency fee contract

but which never resulted in Fox instituting this action, either in state court or in federal court. Fox and his firm were discharged before any litigation ensued.

 Under an accepted four-factor test for district courts to apply when determining whether to exercise ancillary jurisdiction, we must consider the following factors: (1) an ancillary matter should arise from the transaction that was the basis of the principal proceeding, during the course of the principal proceedings, or as an integral part of the main proceeding; (2) the federal court should be able to determine the matter without a substantial new fact-finding proceeding; (3) failing to determine the matter should not deprive a party of any important procedural or substantive right; and (4) the matter should be decided if necessary to protect the integrity of the principal proceeding or insure that its disposition is not frustrated. *Jenkins,* 670 F.2d at 918.

 Applying this formulation of the necessary elements, Fox's newly-raised demands for reimbursement of fees and costs from Plaintiff woefully fail this test, just as they did in *Jenkins.* First, Fox's fee dispute with Plaintiff is not an integral part of the main proceeding. Fox never appeared as counsel of record in this case. His firm's and his claims arose directly out of a legal relationship that pre-dated and was terminated prior to the litigation.

Second, the court would be unable to resolve the fee dispute without substantial new fact-finding on the breach of contract issue that involves a factual dispute that pre-dated the filing of this action and that will likely require adjudication of contractual claims, defenses, and counter-claims that are normally outside the scope of this court's subject matter jurisdiction. These extraneous and extra-jurisdictional claims will require substantial discovery and can likely only be resolved after a jury trial.

Hence, because Fox's claim requires a substantial new fact-finding procedure foreign to this action, that normally counsels against the exercise of ancillary jurisdiction.

Third, the court will not deprive the parties of their rights by declining to decide the fee dispute. Fox was never a party to this action in any way. He did not even know it existed until it was over, a fact which utterly belies Fox's claimed entitlement to benefit from this jurisdiction. He can proceed with any contractual claims at law that he may have before a Florida court of general jurisdiction. The discharge of any untimely equitable charging lien in this forum does not dispose or adjudicate any such claim he or his firm may have in any other jurisdiction.

And, finally, we do not find that this fee dispute must be decided here to protect the integrity of the underlying litigation or to insure that its disposition is not frustrated. Resolution of this fee dispute is clearly not necessary to render complete justice to the parties and lawyers who appeared in this lawsuit. As Judge Martinez concluded in the dismissal of the *Travelocity* lawsuit, this action may simply be dismissed pursuant to the stipulated dismissal and all parties who ever had anything to do with the filing or resolution of this case may go hence without day.

Therefore, in the Court's view the doctrine of ancillary jurisdiction cannot possibly apply to the fee claim now raised by Fox, whether or not that fee claim has any merit whatsoever. As the cases described above highlight, ancillary jurisdiction is designed, narrowly, to protect the parties to the litigation itself—not third parties like Fox who are strangers to the litigation. He and his law firm's claim does not have a "factual and logical dependence on the primary lawsuit." *Peacock v. Thomas*, 516 U.S. at 355, 116 S.Ct. 862. Fox was not counsel of record in the "lawsuit properly

before the court" and his claims do not arise from "work done in the suit being litigated...." *Garrick v. Weaver*, 888 F.2d at 690 (quoting *Jenkins*, 670 F.2d at 918). His claims clearly do not arise from "work performed in the underlying litigation." *Foster*, 771 F.Supp. at 1120.

In short, Fox has not shown that the Court can or should exercise ancillary jurisdiction over his contractual dispute with his former client. *See also Pay Television of Greater New York, Inc. v. Sheridan*, 766 F.2d 92, 94 (2d Cir.1985) ("The district court's jurisdiction to fix fees stemmed from its power to control the case before it; a case between [plaintiff] and the sellers of the complained of equipment. [Counsel] was not a party to that suit and diversity between him and his client did not enlarge the district court's limited ancillary jurisdiction over the fee dispute."); *Indu Craft, Inc. v. Bank of Baroda*, 1996 WL 556935, *3 (S.D.N.Y. Oct. 1, 1996) (citing *Pay Television*, exercising ancillary jurisdiction over lawyer's fee dispute *except* as to work performed for client on other litigation not before the federal court; "Even assuming the validity of the second retainer agreement, when fixing the amount of the lien on the judgment procured in this action, the court may only consider the hours spent on this action.").

Finally, under the supplemental jurisdiction statute, the Court may "may decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction, or ... there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(3–4). For the reasons articulated above, and in accordance with the supporting cases we relied upon, the Court finds that supplemental jurisdiction should not be exercised over Fox's claim to fees and costs. To involve a federal court, after the underlying claims have been dis-

missed, over a lawyer's fee dispute that is generated from work performed prior to the litigation at issue is an undue extension of the supplemental jurisdiction statute.

### B. The Charging Lien is Defective Under Florida Law

The Court could stop here in its discussion based upon the absence of federal jurisdiction to adjudicate Fox's newly filed charging lien. But, in the interest of completeness, the Court has also reviewed Florida law with respect to the proper extension of charging liens under circumstances like this one. That review has revealed that Florida law also precludes the Court exercising jurisdiction to adjudicate this charging lien.

■ Florida common law defines a charging lien as a mechanism by which an attorney may enforce her equitable right to have costs and fees owed for legal services secured by the judgment or recovery in a lawsuit. *See Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So.2d 1383, 1384 (Fla.1983); *Flynn v. Sarasota County Pub. Hosp. Bd.*, 169 F.Supp.2d 1363, 1368 (M.D.Fla.2001). "No statutes outline the requirements for valid attorney's liens in Florida. Rather case law acts as the sole guide for both attorneys and courts as to these liens." *Daniel Mones, P.A. v. Smith*, 486 So.2d 559, 561 (Fla.1986). All proceedings in Florida to resolve an attorney's charging lien for legal services are equitable in nature. *See Nichols v. Kroelinger*, 46 So.2d 722 (Fla.1950).

■ To impose a charging lien, a court in equity must find: (1) an express or implied contract between the attorney and client; (2) an express or implied understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and, most relevant here, (4) a

timely notice of a request for a lien. *E.g., Sinclair*, 428 So.2d at 1385; *Gottlieb*, 97 F.Supp.2d at 1311.

■ First, the Court finds that under current Florida law a charging lien only applies to legal services rendered in the case that produced the recovery, absent an express contractual provision to the contrary. *Jaye v. Royal Saxon, Inc.*, 687 So.2d 978 (Fla. 4th DCA 1997) ("Fees and charges incurred outside of a suit are not, absent special circumstances, covered by a charging lien."). The court in *Jaye* did state that "special circumstances" could result in a different outcome. But the Court has found no case where that exception has ever been applied, and indeed does not know what special circumstances the court was contemplating.

■■ But even if there are such circumstances available, this is not the case to apply them. A charging lien will not generally attach to anything other than the "tangible fruits" of the lawyer's services. *Correa v. Christensen*, 780 So.2d 220 (Fla. 5th DCA 2001). That means that "[b]y definition, an attorney's charging lien cannot attach to property not involved in the suit and not before the court." *Cole v. Kehoe*, 710 So.2d 705, 706 (Fla. 4th DCA 1998); *see also Franklin & Marbin, PA. v. Mascola*, 711 So.2d 46, 53 (Fla. 4th DCA 1998) (charging lien proceeding only applies when "identifiable property recovered as a result of the lawyer's labors"); *Litman v. Fine, Jacobson, Schwartz, Nash, Block & England, P.A.*, 517 So.2d 88, 92 (Fla. 3d DCA 1987) ("the lien will attach only to the tangible fruits of the services"). "It is not enough to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the

services." *Mitchell v. Coleman*, 868 So.2d 639, 641 (Fla. 2d DCA 2004).

Here, Fox's charging lien cannot attach to property that was not involved in a lawsuit that he or his firm filed. Although his work may have indirectly benefitted the recovery here, sufficient to give rise to a quantum meruit claim (a proposition we assume but do not find), that work does not give rise to an equitable charging lien in an action foreign to him. His claim, to the extent it has any legs at all, must be filed in the ordinary course of a contract action in state court. In other words, his equitable lien never attached to the recovery in this case, because he never filed, worked on, or settled this case. He never even knew about this case until it was over. By definition, therefore, he cannot assert an equitable charging lien.

At best, he has a contractual at law claim for quantum meruit, in accordance with *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So.2d 366, 368 (Fla.1995), a case that he relies on here. But unlike the discharged lawyers in that case who had initiated the action prior to their discharge, *id.* at 367, Fox never filed or ever appeared as counsel of record in this action. An equitable lien is not available to him under those circumstances under Florida law.

Second, Fox's newly-filed charging lien cannot be adjudicated under Florida law because it is grossly untimely. "There are no requirements for perfecting a charging lien beyond timely notice." *Sinclair*, 428 So.2d at 1385. "In order to give timely notice of a charging lien an attorney should either file a notice of lien or otherwise pursue the lien in the original action." *Daniel Mones*, 486 So.2d at 561. In order to be "timely," notice of an attorney's charging lien must be filed "before the lawsuit has been reduced to judgment or dismissed pursuant to settlement." *Brown v. Vermont Mutual Ins. Co.*, 614 So.2d 574, 580 (Fla. 1st DCA 1993); *see also Citizens & Peoples Nat'l Bank of Pensacola v. Futch*, 650 So.2d 1008, 1015 (Fla. 1st DCA 1994) ("The attorney's charging lien must be filed before the case goes to final judgment or is dismissed.").

There is no dispute in this case that Fox did not file or serve any "notice" of his charging lien until *after* he was notified by Plaintiff's counsel that the case had been resolved. As Florida caselaw provides, such a notice does not timely perfect a right to impose an equitable charging lien. To do so, Fox had to serve his notice shortly after his discharge from the case or, at the very least, before the resolution of the case. Instead, Fox served and, then filed, his notice after the case had been closed. It is glaringly untimely.

Moreover, the court has found no case where similar facts were deemed timely for purposes of an equitable charging lien. To the contrary, even the cases that Fox found relevant to this issue underscore the point that Fox's notice is untimely and defective. *See, e.g., In re Summit View, LLC,* 2011 WL 3268367, at *5 (M.D.Fla. Aug. 1, 2011), *aff'd*, 472 Fed.Appx. 900 (11th Cir.2012) ("The confirmation order in the Summit View case was entered on March 17, 2010. At the time of confirmation, Appellant had not given any notice of a charging lien. By its own admission, Appellant asserts that the first mention of a charging lien was made during open court at a status conference on May 26, 2010, over two months after confirmation. Furthermore, Appellant's Notice of Charging Lien was not filed until August 17, 2010. Therefore, according to Appellant's own argument, and admitted facts, the notice was given after the final confirmation order was entered, and therefore, was not timely as to the plan payments."); *Levine v. Gonzalez*, 901 So.2d 969, 973–74 (Fla. 4th DCA 2005) ("Because [plain-

tiffs/clients] filed an effectual notice of voluntary dismissal on September 29, 2003, and [law firm] did not file the notice of charging lien until October 1, 2003, the trial court was without jurisdiction to entertain, or enter an order regarding, the motion to foreclose the charging lien filed on November 20, 2003. Additionally, because the charging lien itself was not filed prior to the notice of voluntary dismissal, it was not perfected because '[i]n order to be 'timely,' notice of an attorney's charging lien must be filed 'before the lawsuit has been reduced to judgment or dismissed pursuant to settlement.' ' ") (citations omitted).[1]

Fox's argument that his lack of knowledge of this federal action should excuse his failure to timely perfect an equitable charging lien is unpersuasive. It instead reenforces why Fox has no equitable claim. Fox had the obligation to monitor federal or state filings that he should have anticipated in light of the plaintiff's alleged injuries. Had he done so, he could have perfected the lien. Instead, he chose to sit back and wait. That decision resulted in Fox seeking to give notice of a lien after a full settlement of the litigation and on the eve of its ultimate dismissal. The notice is thus untimely under any measure. *See, e.g., Flynn,* 169 F.Supp.2d at 1369 ("After careful consideration, I conclude that the notice of charging lien in this case was untimely, coming as it did well over three months after the Corrected Judgment and over two months after the mediated settlement of all remaining issues and claims.").

---

**1.** None of the other cases cited by Fox support his position. In *Barry A. Cohen, P.A. v. LaTorre,* 595 So.2d 1076 (Fla. 2d DCA 1992), the plaintiff law firm filed an action for declaratory relief. This is not relevant to the timeliness of a notice of an equitable charging lien in the underlying proceeding. Similarly, *Berryer v. Hertz,* 522 So.2d 510 (Fla. 3d DCA

### III. CONCLUSION

For these reasons, neither Federal nor Florida law allow this Court to adjudicate Fox's or his law firm's charging lien. The lien is indeed a nullity and must be stricken, without prejudice of course to Fox pursuing any claims at law that he may before a court of general jurisdiction.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1. Plaintiff's Motion to Allow Settlement Distribution, and Motion to Strike Charging Lien, if any, of Prior Counsel [D.E. 38] is **GRANTED.** Any notice of charging lien served upon Plaintiff or his counsel related to this matter is **STRICKEN** without prejudice to resolution of any at law claims related thereto. Plaintiff's counsel shall distribute all remaining settlement funds in accordance with the settlement reached in this action.

2. Fox's Motion for Attorneys' Fees and Notice of Charging Lien [D.E. 42] is **DENIED** without prejudice to resolution of any at law claims related thereto. This Court lacks jurisdiction to adjudicate any such claims. The Notice of Charging Lien is **STRICKEN** and discharged for purposes of this action. This action remains Closed.

1988), is also irrelevant because that was an action where an attorney brought a countersuit against his former client for the balance of his fee pursuant to language in a retainer agreement. This is hardly the case here and illustrates, instead, how Fox will have to pursue his and his law firm's legal claims if he wishes to do so.