**AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES (AFSCME) COUNCIL 79, Plaintiff,**

v.

**Rick SCOTT, in his official capacity as Governor of the State of Florida, Defendant.**

**Case No. 11–21976–CIV.**

United States District Court, S.D. Florida.

June 13, 2013.

Daren Alan Stabinski, Stabinski & Funt, Maria Kayanan, ACLU of Florida, Shalini Goel Agarwal, ACLU Foundation of Florida, Inc., Miami, FL, Peter G. Walsh, David W. Singer & Associates, P.A., Hollywood, FL, for Plaintiff.

Jason Vail, Attorney General Office, Jesse Michael Panuccio, Department of Economic Opportunity, Michael M. Sevi, Executive Office of the Governor, Tallahassee, FL, for Defendant.

## ORDER DENYING LAW OFFICE OF STABINSKI & FUNT, P.A.'S MOTION TO WITHDRAW AS COUNSEL AND STRIKING NOTICE AND CLAIM OF ATTORNEY'S CHARGING LIEN

EDWIN G. TORRES, United States Magistrate Judge.

This matter is before the Court on Stabinski & Funt, P.A.'s ("Stabinski") Motion to Withdraw as Counsel for Plaintiff [D.E. 112] and Verified Notice and Claim of Attorney's Charging Lien, [D.E. 113], filed April 25 and 26, 2013. Plaintiff American Federation of State, County, and Municipal Employees Council 79 ("AFSCME") filed a Response in Opposition, [D.E. 117], on May 2, 2013 to which Stabinski replied on May 8, 2013. [D.E. 119]. Pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, this motion was referred to the undersigned by the Honorable Ursula Ungaro, United States District Judge, on May 15, 2013. [D.E. 120]. Thus, the matter is ripe for disposition.

Stabinski claims it represented AFSCME through attorney Peter Walsh from July 17, 2009 until January 24, 2013. [D.E. 113]. After Mr. Walsh ended his association with Stabinski, the firm filed this motion to withdraw as counsel and claim of attorney's charging lien. [D.E. 112 & 113]. AFSCME replied, claiming, *inter alia,* that this Court lacks subject matter jurisdiction. [D.E. 114]. For the following reasons, we find that Stabinski's claim does not fall within the Court's supplemental jurisdiction as defined in 28 U.S.C. § 1367. We do not consider the merits of the dispute between Mr. Walsh and Stabinski. Accordingly, the lien must be stricken, without prejudice to Stabinski pursuing any claims at law that he may before a Florida court of general jurisdiction. As we have found no agreement between AFSCME and the Stabinski firm, the Motion to Withdraw, [D.E. 112], is denied as moot.

## I. BACKGROUND

A lengthy recitation of all the particular details of the dispute between AFSCME and Governor Scott is not necessary, given the Court's rulings herein. AFSCME entered into a retainer agreement in this

case with the American Civil Liberties Union of Florida, Inc. ("ACLU"), [D.E. 114–1], to represent it during its challenge of Executive Order Number 11–58, which created drug testing regimes for employees of state agencies. [D.E. 1 at 2]. The ACLU occasionally seeks the assistance of "cooperating attorneys" in certain matters. [D.E. 114–2]. In this matter, the ACLU, through its Legal Director Randall C. Marshall, entered into an agreement with Peter Walsh. [D.E. 114–2 at ¶ 3]. In his declaration, Director Marshall notes that customary practice requires an attorney to sign a retainer agreement which designates the individual as an "attorney of record" to represent ACLU's client. [D.E. 114–2 at ¶ 2]. If the director recruits a law firm, the director will "specifically include language to the effect that the client consents to the ACLU and/or law firm adding or utilizing additional counsel to assist in the representation covered by the agreement." [D.E. 114–2 at ¶ 2]. In the retainer agreement between the ACLU and Mr. Walsh, no authority was given for Mr. Walsh or the ACLU to designate other attorneys as counsel. [D.E. 114–2 at ¶ 3]. The retainer listed the following as the "cooperating counsel:"

Peter Walsh

Law Office of Peter G. Walsh P.A.

757 NW 27th Ave

Miami, FL 33125–2012

(305) 643–3100

pwalsh@stabinksi-funt.com

On filings in this matter, in place of "Law Office of Peter G. Walsh P.A." Mr. Walsh included "Stabinski & Funt, PA," but listed the same address, email, and telephone. *E.g.*, D.E. 1. This signature block fit the format required by the retainer agreement. [D.E. 114–2]. However, Stabinski claims this signature block made Stabinski & Funt, P.A., counsel of record for the case. [D.E. 117].

Mr. Walsh was "of counsel" at Stabinski during the course of litigation, until January 24, 2013. [D.E. 113]. Between filing on May 31, 2011 [D.E. 1], and his departure, Mr. Walsh prepared motions at his office at the Stabinski firm. [D.E. 117]. Additionally, Stabinski advanced costs of litigation which, after reimbursement from the ACLU, has a balance of $7,472.88. [D.E. 83–5; 83–6; 117]. Director Marshall assures that, should plaintiff prevail, Stabinski will be reimbursed for costs that are recovered. [D.E. 114–2 at ¶ 7]. Stabinski also claims that Mr. Walsh kept track of his hours worked using Stabinski's computer system and AFSCME obtained benefits of the Stabinski firm name and staff support during the course of litigation. [D.E. 117].

## II. ANALYSIS

■ The federal courts are courts of limited jurisdiction. We possess only the power strictly authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The court's jurisdiction cannot be expanded merely through judicial decree. *Id.* (citations omitted). Rather, one is to presume that a cause lies outside the jurisdiction of the Court and the party asserting jurisdiction must overcome this burden. *Id.*

■ There are narrow exceptions, however, to this general rule. One such exception, the doctrine of ancillary jurisdiction, "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* at 378, 114 S.Ct. 1673. Justice Scalia's opinion for the Court in *Kokkonen* described this ancillary jurisdiction as a way "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority,

and effectuate its decrees." *Id.* at 379–80, 114 S.Ct. 1673. The Court, however, emphasized that the doctrine's limits are quite narrow. "[N]o controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Id.* (quoting *Fulton Nat'l Bank of Atlanta v. Hozier,* 267 U.S. 276, 280, 45 S.Ct. 261, 69 L.Ed. 609 (1925)).

■ Ancillary jurisdiction "rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety," *Jenkins v. Weinshienk,* 670 F.2d 915, 918 (10th Cir.1982), and "may extend to claims having a factual and logical dependence on 'the primary lawsuit.'" *Peacock v. Thomas,* 516 U.S. 349, 355, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (citations omitted). "The basis of the doctrine of ancillary jurisdiction is the practical need 'to protect legal rights or effectively to resolve an entire, logically entwined lawsuit.'" *Id.* (quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)).

The supplemental jurisdiction statute, 28 U.S.C. § 1367, incorporated these concepts of ancillary jurisdiction (plus the related concept of "pendent" jurisdiction) into "supplemental" jurisdiction. The statute provides, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." Supplemental jurisdiction over the "same case or controversy," therefore, represents the "constitutional limits of federal judicial power." *Owen Equip.,* 437 U.S. at 371, 98 S.Ct. 2396.

■ Under an accepted four-factor test for district courts to apply when determining whether to exercise ancillary jurisdiction, we must consider the following factors: (1) an ancillary matter should arise from the transaction that was the basis of the principal proceeding, during the course of the principal proceedings, or as an integral part of the main proceeding; (2) the federal court should be able to determine the matter without a substantial new fact-finding proceeding; (3) failing to determine the matter should not deprive a party of any important procedural or substantive right; and (4) the matter should be decided if necessary to protect the integrity of the principal proceeding or insure that its disposition is not frustrated. *Bruton v. Carnival Corp.,* 916 F.Supp.2d 1262, 1263–64, 1266–67 (S.D.Fla.2012) (citing *Jenkins,* 670 F.2d at 918). Each factor of this test counsels against this Court's exercise of ancillary jurisdiction over Stabinski's claims.

### A. This Matter Is Not An Integral Part of the Main Proceeding

Stabinski correctly recognizes that the ancillary jurisdiction doctrine is often utilized to adjudicate the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due to the attorneys for work performed in the lawsuit. *See, e.g., Gottlieb v. GC Financial Corp.,* 97 F.Supp.2d 1310 (S.D.Fla.1999); *Zaklama v. Mount Sinai Medical Center,* 906 F.2d 650 (11th Cir.1990) (both adjudicating post-judgment attorneys' fees disputes under Florida law charging liens); *see also Rivera–Domenech v. Calvesbert Law Offices PSC,* 402 F.3d 246, 250 (1st Cir.2005) ("Courts have rested the exercise of jurisdiction over [attorney-client] fee disputes related to proceedings before them on the doctrine of ancillary jurisdiction."); *Garrick v. Weaver,* 888 F.2d 687, 690 (10th Cir.1989) (quoting *Jenkins,* 670 F.2d at 918: "It is well established that '[d]eter-

mining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.' ").

██ Stabinski's claim, however, is distinguishable from the cases described above because Stabinski was never retained by AFSCME. The record reflects that Mr. Walsh was retained as a "cooperating attorney" of the ACLU in an agreement to which Stabinski was not a party. [D.E. 114–2]. Although the firm does appear in Mr. Walsh's signature block in several filings, that fact does not imply AFSCME's consent to representation by a party (Stabinski) not included in the retainer agreement. Florida law[1] permits an implied contract between an attorney and client when no express agreement was reached as to the amount of fees to be paid. See Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So.2d 1383, 1384 (Fla.1983); Greenfield Villages v. Thompson, 44 So.2d 679, 682 (Fla.1950). However, Florida law also prohibits overriding the plain terms of a contract. See, e.g., State v. American Tobacco Co., 723 So.2d 263, 268 (Fla.1998) (declining to impose a charging lien when it would be contrary to the plain terms of a contract entered between a party and its attorneys). The plain terms of the retainer include no reference to Stabinski as a counsel of record. In fact, the only reference to Stabinski on the retainer is in Mr. Walsh's email address. [D.E. 114–2]. Implying that this retainer agreement must also include Stabinski based on future unilateral inclusion of the firm name in Mr. Walsh's address overrides these plain terms.

██ Further, imposition of a charging lien requires an express or implied understanding between parties that a contract exists. See Bruton, 916 F.Supp.2d at 1267–68 (citing Sinclair, 428 So.2d at 1385). Director Marshall, an attorney with the ACLU who represented AFSCME and contracted with Mr. Walsh, and Ms. Gonzalez, Counsel for AFSCME, both state without contravention that there was no express understanding that Stabinski represented AFSCME. [D.E. 114–1; 114–2].

Yet, Stabinski asserts that an implied understanding occurred either because filings included the firm's name as part of Mr. Walsh's address or because AFSCME knew Stabinski advanced costs and provided resources to Mr. Walsh. [D.E. 117 at 7]. Neither reason is sufficient to find that Stabinski was counsel to AFSCME during the proceedings. Stabinski's name in the address bar, as Director Marshall explains, was understood to refer to Mr. Walsh's office at the firm's address. AFSCME is not required to know of the contractual arrangement of where Mr. Walsh maintains his legal office or the arrangement Mr. Walsh made with Stabinski as to use of the firm's resources. Stabinski did not file any appearance in the matter, which is a more telling fact that runs counter to Stabinski's position.

Also, AFSCME did not provide consent to Stabinski to represent the organization, as is customary practice if the ACLU retains a firm to cooperate in litigation. [D.E. 114–2]. Therefore, "we have no record from which we can deduce that any such understanding was implied" and, thus, are unable to fashion an agreement between Stabinski and AFSCME by implication. Yarbrough v. Abe Rosenberg, P.A., 565 So.2d 363, 364 (Fla.App. 4th DCA 1990) (finding the lack of understanding

---

**1.** "Federal courts, although they recognize no common-law lien in favor of attorneys, give effect to the laws of the states in which they are held." Gottlieb, 97 F.Supp.2d 1310, 1311 (S.D.Fla.1999).

failed to meet the *Sinclair* standard). These circumstances are insufficient to imply a contractual agreement between Stabinski and AFSCME, especially when such agreement would contradict the plain language of the retainer agreement.

The dispute here is over the contractual arrangements between *an attorney and his former employer,* as opposed to the cases in which ancillary jurisdiction is correctly used to exercise jurisdiction over disputes between *attorney and client.* Stabinski's claim is not an integral part of AFSCME's suit against Governor Scott. Several other districts have, other than in class action settlements, "declined to exercise ancillary jurisdiction over disputes between attorneys as to the proper division of fees earned in the underlying litigation" because it is unrelated to the original suit. *See Foster v. Board of Trustees of Butler County Community College,* 771 F.Supp. 1118, 1121 (D.Kan.1991). For example, fee disputes between an attorney who resigned as a shareholder of a law firm and his former firm were not germane to civil litigation regarding a hijacked airplane because the dispute "does not involve the clients directly." *See In re Hijacking of Pan Am. World Airways, Inc. Aircraft at Karachi Int'l Airport,* 698 F.Supp. 479, 482 (S.D.N.Y.1988).

█ Similarly, disputes which arise from a private contract between attorneys are wholly tangential to the federal question claims raised by AFSCME and, thus, are not integral to the main proceeding and do not provide a basis for ancillary jurisdiction. *See Hogben v. Wyndham Int'l, Inc.,* 2007 WL 2225970 *1, *6 (S.D.Fla. Aug. 1, 2007) (declining to exercise ancillary jurisdiction over third parties who are affected by the outcome in the main case "only tangentially"); *Taylor v. Kelsey,* 666 F.2d 53, 54 (4th Cir.1981) (per curiam) (declining to exercise jurisdiction over a fee dispute between attorneys be-cause it "did not arise as a matter of necessity from anything which occurred in the proceedings of the [ ] litigation").

### B. This Matter Would Require Substantial New Fact–Finding

Supplemental jurisdiction is not properly exercised over "extraneous and extra-jurisdictional claims [which] will require substantial discovery and can likely only be resolved after a jury trial." *Bruton,* 916 F.Supp.2d at 1266; *see also Foster,* 771 F.Supp. at 1122 (applying *Jenkins* and declining to exercise jurisdiction over fee splitting claims which required extensive discovery and a jury trial). Stabinski may have claims that Mr. Walsh breached his contract with Stabinski or was unjustly enriched by use of the firm's resources or cost advances. The details of Mr. Walsh's employment contract, agreements with Stabinski regarding acting as an individual, and activities as cooperating counsel with the ACLU in this case are potential areas of discovery which may be relevant to determination of these, or other, claims. Such claims, if they have merit, may require summary judgment motions or trial. All of these issues are foreign to the original action and, consequently, the proper resolution of Stabinski's claims will require substantial fact-finding. These claims do not invoke a question of federal law and neither side asserts this Court's diversity jurisdiction.

Therefore, these contract claims are properly resolved under Florida law and proceedings appropriately conducted in a Florida court, if necessary.

### C. No Party Will Be Deprived Of Procedural Or Substantive Rights

The claims made by AFSCME against Governor Scott will not be affected by this Court's refusal to exercise jurisdiction over Stabinski's claim. *See Foster,* 771 F.Supp.

at 1122 (finding the court's failure to decide the fee dispute between attorneys did not deprive the parties to the original action of their rights because they were not involved in the fee dispute). AFSCME, for the reasons described above, was not a party to any contract with Stabinski and is not affected by any dispute between Mr. Walsh and the Stabinski firm. Likewise, Governor Scott has no involvement in the dispute. The original claim regarding constitutional rights can proceed unaffected by this dispute.

Furthermore, the procedural and substantive rights of Mr. Walsh and Stabinski are unaffected by the Court's refusal to exercise jurisdiction. *See Bruton*, 916 F.Supp.2d at 1267 (denial of Motion for Attorneys' Fees and Notice of Charging Lien without prejudice did not infringe on the rights of the movant to file his claim in state court). No right of the Stabinski firm would be "irretrievable lost unless [it] could assert them in an ongoing action in a federal court." *Owen Equip.*, 437 U.S. at 376, 98 S.Ct. 2396. Stabinski is free to proceed with any claims at law that he may have before a Florida court of general jurisdiction. The decision of this Court does not dispose of or adjudicate any such claim Stabinski may have in any other jurisdiction and this Court refrains from addressing the merits of any such claims as they are not properly presented.

### D. No Resolution is Necessary for the Principal Proceeding

We do not find that this fee dispute must be adjudicated to protect the integrity of the underlying litigation or to insure that its disposition is not frustrated. In the context of fee disputes between attorneys and clients, the exercise of ancillary jurisdiction is particularly appropriate because courts have inherent jurisdiction to supervise the bar and to insure compliance with the reasonableness standard set forth in the attorneys' rules of ethics and professional responsibility. *E.g., Broughten v. Voss*, 634 F.2d 880, 882 (5th Cir.1981) ("The basis for exercise of this ancillary jurisdiction is the responsibility of the court to protect its officers ... and the power of the court 'to do full and complete justice.'") (internal citations omitted). This dispute, as detailed above, is not between attorney and client and, therefore, *not* necessary to render complete justice to AFSCME, Governor Scott, or the fees that each party may owe their attorney of record.

Therefore, in the Court's view, the doctrine of ancillary jurisdiction cannot possibly apply to the fee claim now raised by Stabinski, whether or not that fee claim has any merit whatsoever. As the cases described above highlight, ancillary jurisdiction is designed narrowly to protect the parties to the litigation itself. Stabinski's dispute with Mr. Walsh, an attorney of record for AFSCME, does not have a "factual and logical dependence on the primary lawsuit." *Peacock*, 516 U.S. at 355, 116 S.Ct. 862.

Because this Court lacks subject matter jurisdiction, we do not continue to analyze the state law issues presented. Stabinski's claim must be filed in the ordinary course of a contract or unjust enrichment action in state court. A state court is the proper forum to hear issues regarding Stabinski & Funt, P.A.'s employment of Peter Walsh presented in these motions and this Court expresses no opinion on the underlying merits of that potential case.

### E. The Motion to Withdraw As Counsel Is Moot

 Stabinski was not a party to the retainer agreement between Mr. Walsh and Plaintiff, represented by Director Marshall of the ACLU. The record reflects that Mr. Walsh as an individual was retained by AFSCME in an agreement pre-

pared by Director Marshall. [D.E. 114–1; 114–2]. AFSCME neither provided consent, nor agreed to, representation by Stabinski. Stabinski's reliance on Local Rule 11.1(d)(3) and Fed.R.Civ.P. Rule 11 is misplaced because neither applies in a situation where an attorney attempting to withdraw was not retained as counsel by the client from whom he or she attempts to withdraw. Because the Stabinski firm is not a party to the agreement, was not retained by AFSCME, and never made an appearance in this case, it never represented AFSCME and need not "withdraw" as counsel from a case in which it never were counsel.

### III. CONCLUSION

For these reasons, this Court is without subject matter jurisdiction under 28 U.S.C. § 1367 to adjudicate Stabinski's charging lien. The lien is indeed a nullity and must be stricken, without prejudice of course to Stabinski pursuing any claims at law that it may have before a Florida court of general jurisdiction.

Accordingly, we hereby **ORDER and ADJUDGE** that Stabinski's Motion and Verified Notice And Claim of Attorney's Charging Lien [D.E. 112] is **DENIED** without prejudice to any such claims being raised in other proceedings. This Court lacks jurisdiction to adjudicate these claims. The Notice of Charging Lien [D.E. 113] is **STRICKEN** and discharged for purposes of this action. Further, because the retainer agreement was not between AFSCME and Stabinski & Funt, P.A., Stabinski's Motion to Withdraw as Counsel is **DENIED AS MOOT.**